THEODORE E. BACON (CA Bar No. 115395)
tbacon@AlvaradoSmith.com
AMY L. MORSE (CA Bar No. 92135)
amorse@AlvaradoSmith.com
RICK D. NAVARRETTE (CA Bar No. 122653)
rnavarrette@AlvaradoSmith.com
T. MATTHEW HANSEN (CA Bar No. 231057)
mhansen@AlvaradoSmith.com
ALVARADOSMITH
A Professional Corporation
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel: (213) 229-2400
Fax: (213) 229-2499

Attorneys for Defendants
JPMorgan Chase Bank, NA, and
California Reconveyance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| BRICK PINCKNEY, an individual, and JEANNE PINCKNEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a Business Entity, form unknown; FIRST AMERICAN TITLE COMPANY, a Business Entity form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Business Entity, form unknown; PINNACLE FINANCIAL, a Business Entity, form unknown; JPMORGAN MORTGAGE ACCEPTANCE CORP., a Business Entity, form unknown; JPMORGAN MORTGAGE ACQUISITION TRUST 2007-CH1; DEUTSCH BANK NATIONAL TRUST COMPANY, a Business Entity, form unknown; CALIFORNIA RECONVEYANCE CO., a Business Entity, form unknown; and DOES 1-100, inclusive,<br><br>Defendant. | CASE NO.:  SACV11-00620 JST (JCGx)<br><br>**NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**Action Filed:**   March 30, 2011 |

*Left margin vertical text:* ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

*Right margin stamp:* FILED
2011 APR 20  PM 3: 24
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
SANTA ANA
BY

*Right margin vertical text:* BY FAX

1

2083669.1

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT defendants JPMorgan Chase Bank, NA ("JPMorgan") and California Reconveyance Company ("CRC") (collectively, "Defendants"), by their attorneys, respectfully file this Notice of Removal, pursuant to 28 U.S.C. §§ 1441 *et seq.*, to remove the above captioned matter from the Superior Court of the State of California for the County of Orange, in which the case is now pending, to the United States District Court for the Central District of California, Southern Division. In support thereof, Defendants state as follows:

1.     On or around March 30, 2011, plaintiffs Brian Pinckney and Jeanne Pinckney (collectively, "Plaintiffs") filed a Complaint in the Superior Court of the State of California for the County of Orange, Central Justice Courthouse, case number 30-2011-00462486 (the "Complaint").

2.     CRC was personally served on March 30, 2011, and is required to respond on or before April 29, 2011. JPMorgan voluntarily accepts the removal of the instant action, and voluntarily appears in this matter.

3.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty days after receipt of the Summons and the Complaint by CRC. A copy of the Complaint is attached hereto as Exhibit "1," as required by 28 U.S.C. § 1446(a).

4.     Defendants have also been served with an Ex Parte Application for Temporary Restraining Order/Order to Show Cause Prohibiting the Sale of Subject Real Property (the "Application"). A true and correct copy of the Application is attached hereto as Exhibit "2."

5.     Plaintiff alleges in the Complaint that Defendants have violated the following federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Fourth Cause of Action), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Under 28 U.S.C. § 1441(b), "[a]ny civil action

2

of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Here, in paragraphs 109 through 131 of the Complaint, Plaintiffs allege that Defendants violated TILA.  In paragraph 132 through 148, Plaintiffs allege that Defendants violated RESPA.  As such, a federal question arises as to whether Defendants are subject to TILA or RESPA, or have violated these statutes.

6.     Defendants will give written notice of the filing of this Notice of Removal to Plaintiffs, and will file a copy of this Notice of Removal with the Superior Court of the State of California for the County of Orange, as required by 28 U.S.C. § 1446(d).

7.     Payment of the appropriate fees and costs for removal and docketing of this matter in federal court, if any, are tendered with this Notice.

WHEREFORE, Defendants respectfully request that this action proceed in this Court as an action properly removed hereto.

DATED:  April 20, 2011                ALVARADOSMITH
                                      A Professional Corporation


                                      By: _____
                                          THEODORE E. BACON
                                          AMY L. MORSE
                                          RICK D. NAVARRETTE
                                          T. MATTHEW HANSEN
                                          Attorneys for Defendants
                                          JPMorgan Chase Bank, NA, and
                                          California Reconvevance Company

 CT Corporation

**Service of Process Transmittal**
04/01/2011
CT Log Number 518290339

**TO:**  Stacey Elliott
JPMorgan Chase Bank, N.A.
9200 Oakdale Ave, 1st Floor, Mail Code CA2-4338
Chatsworth, CA 91311

**RE:**  **Process Served in California**

**FOR:**  California Reconveyance Company (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Brick Pinckney, etc. and Jeanne Pinckney, etc., Pltfs. vs. JP Morgan Chase Bank, N.A., etc., et al. including California Reconveyance Co, etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Cover Sheet, Complaint, Exhibit |
| **COURT/AGENCY:** | Orange County, Superior Court, CA Case # 30201100462486 |
| **NATURE OF ACTION:** | Quiet Title - 30982 Steeple Case, San Juan Capistrano, CA 92675 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/01/2011 at 12:00 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Brick Pinckney 30982 Steeplechase Dr San Juan Capistrano, CA 92675 949 388 5801 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/01/2011, Expected Purge Date: 05/01/2011 Image SOP |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT 1**

4

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

See Attachment "A"

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BRICK PINCKNEY, an individual, and JEANNE PINCKNEY, an
individual;

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAR 30 2011

ALAN CARLSON, Clerk of the Court

BY _____ B. LEA _____ DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):*  Orange County Superior Court <br> Central Justice Center - 700 Civic Center Drive West, Santa Ana, <br> CA 92701 | CASE NUMBER: <br> *(Número del Caso):* <br> 30-2011-462486 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

| DATE: MAR 3 0 2011 <br> *(Fecha)* | ALAN CARLSON | Clerk, by <br> *(Secretario)* | BRITTNEY LEA | , Deputy <br> *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov <br> American LegalNet, Inc. <br> www.FormsWorkflow.com

**EXHIBIT 1**
5

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PINCKEY v. JP MORGAN CHASE BANK, et.al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

JP MORGAN CHASE BANK, N.A., a Business Entity, form unknown; FIRST AMERICAN TITLE COMPANY, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Business Entity, form unknown; PINNACLE FINANCIAL, a Business Entity, form unknown; JP MORGAN MORTGAGE ACCEPTANCE CORP, a Business Entity, form unknown; JP MORGAN MORTGAGE ACQUISITION TRUST 2007-CH1; DEUTSCHE BANK NATIONAL TRUST COMPANY, a Business Entity, form unknown; CALIFORNIA RECONVEYANCE CO, a Business Entity, form unknown: and DOES 1-100 inclusive;

Defendants.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**EXHIBIT 1**
6

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

BRICK PINCKNEY, IN PRO-PER
JEANNE PINCKNEY, IN PRO-PER
30982 STEEPLECHASE DR
SAN JUAN CAPISTRANO, CA 92675
TELEPHONE NO.: 949-388-5801   FAX NO.: 949-248-8871
ATTORNEY FOR *(Name):* Plaintiff's IN PRO-PER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
PINCKNEY v. JP MORGAN CHASE BANK, et.al.

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAR 30 2011

ALAN CARLSON, Clerk of the Court

BY E. IBARRA, DEPUTY

CASE NUMBER: 30-2011 00462486

JUDGE JAMES J. DI CESARE
DEPT: C18

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* Twenty (20)
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March  , 2011

Brick Pinckney, Jeanne Pinckney
*(TYPE OR PRINT NAME)*                              *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

**EXHIBIT 1**

7

BRICK PINCKNEY, In Pro-Per
JEANNE PINCKNEY In Pro-Per
30982 Steeplechase DR
San Juan Capistrano, CA 92675
Tel: (949) 388-5801
Fax: (949) 248-8871
jbpinckney@yahoo.com

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAR 30 2011

ALAN CARLSON, Clerk of the Court

BY: ____F. IBARRA____ ,DEPUTY

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE**  30-2011

00462486

| | |
|---|---|
| BRICK   PINCKNEY,   an   individual,   and JEANNE PINCKNEY, an individual; | Case No.: |
| Plaintiffs, | CIVIL COMPLAINT FOR: |
| v. | 1. DECLARATORY RELIEF; |
| | 2. INJUNCTIVE RELEIF; |
| JP MORGAN CHASE BANK, N.A., a Business Entity, form unknown; FIRST AMERICAN TITLE COMPANY, a Business Entity, form unknown;   MORTGAGE   ELECTRONIC REGISTRATION SYSTEMS, INC., a Business Entity,   form   unknown;   PINNACLE FINANCIAL, a Business Entity, form unknown; JP MORGAN MORTGAGE ACCEPTANCE CORP, a Business Entity, form unknown; JP MORGAN MORTGAGE ACQUISITION TRUST 2007-CH1;   DEUTSCHE   BANK NATIONAL TRUST COMPANY, a Business Entity,   form   unknown;   CALIFORNIA RECONVEYANCE CO, a Business Entity, form unknown: and DOES 1-100 inclusive; | 3. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; |
| | 4. VIOLATIONS OF TILA; |
| | 5. VIOLATIONS OF RESPA; |
| | 6. VIOLATION OF CALIFORNIA CIVIL CODE § 1918-1920.1921; |
| | 7. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(10)(c); |
| | 8. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 b(2); |
| | 9. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B |
| Defendants. | 10. RECISSION; |
| | 11. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP) [FRAUDULENTLY PROCURED DOCUMENTS]; |
| | 12. CANCELLATION OF WRITTEN INSTRUMENT; |
| | 13. BREACH OF FIDUCIARY DUTY; |
| | 14. UNCONSCIONABILITY; |
| | 15. PREDATORY LENDING; |

JUDGE MICHAEL L. CARSON
DEPT. C18

**EXHIBIT 1**
8

16. QUIET TITLE
17. WRONGFUL FORECLOSURE
18. SLANDER OF TITLE
19. SECURITIES FRAUD
20. TRESPASS ON CONTRACT

**Unlimited Jurisdiction**
**Jury Trial Demanded**

Plaintiffs BRICK PINCKNEY and JEANNE PINCKNEY (hereinafter referred to as "Plaintiffs" or "Alleged Borrowers"), allege as follows:

## INTRODUCTION

1.     This is an action brought by Plaintiffs for a declaratory judgment, injunctive and equitable relief, and for compensatory, special, general, and punitive damages.

2.     Plaintiffs, the homeowners, dispute the title and ownership of the real property which is the subject of this action, in that the originating mortgage alleged "Lender", and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust, and, thus, do not have a lawful ownership or security interest in the real property of Plaintiffs which is described in detail herein.

3.     Plaintiffs allege that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiation, assignment and/or ownership of the Alleged Borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

4.     Plaintiffs further allege that Defendants, and each of them, cannot establish possession and proper transfer and endorsement of the Promissory Note and proper assignment of the Deed of Trust; therefore, none of the Defendants have perfected any claim of title or security interest in the

**EXHIBIT 1**
9

Subject Property.   Defendants, and each of them, do not have the ability to establish that the mortgage that secures the indebtedness, or Note, was legally or properly acquired.

5.   Plaintiffs allege that an actual controversy has arisen and now exists between Plaintiffs and Defendants, and each of them.   Plaintiffs desire a judicial determination and declaration of the rights of Plaintiffs with regard to their real property and the Promissory Note and Deed of Trust herein.

6.   Plaintiffs attempted to resolve this matter Privately by seeking Clarification of the specifics of the Contract.   Defendants were Noticed and given ample time in which to respond to this request for Clarification as is the duty of a Party to a Contract.

7.   Plaintiffs also seek redress from the Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

(a)   An invalid and unperfected security interest in the Subject Property hereinafter described in this Complaint;

(b)   Void "True Sale(s)" violating California and Federal law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Plaintiffs' mortgage, which are Trust Agreements required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions (see further discussion of the PSA herein);

(c)   An incomplete and ineffectual perfection of a security interest in Plaintiffs' real property;

EXHIBIT 1
10

(d)      Violations of California Business and Professions Code §17200 and Unfair

and Deceptive Business Acts and Practices, namely fraudulently procured documents; and

Void or voidable Deeds of Trust due to improper securitization, for which there is a reasonable

apprehension that if it is left outstanding it may cause a serious and/or irreparable injury.


**PARTIES**

8.  At all times relevant herein, Plaintiffs are over the age of eighteen and are residents of the

City of San Juan Capistrano, County of Orange, State of California.

9.  The real estate that is the subject of this litigation is 30982 Steeple Case, San Juan

Capistrano, CA 92675 (hereinafter referred to as "Subject Property").

10. Plaintiffs purportedly entered into a loan repayment and security agreement on or about

December 14, 2006, with  Defendant JP MORGAN CHASE BANK, N.A. (hereinafter referred to as

"JP"), which allegedly required Plaintiffs to repay a loan in the amount of $1,836,200. The terms of

the 1st mortgage loan are as follows: 3 year ARM, with an initial rate of 5.75%, initial payment of

$8798.46, with a 10 year interest only feature. After the initial 3 year period, the rate adjusts every

12 months.    The interest rate is based on the 12-month LIBOR plus a margin of 2.5%. On the first

change, the loan can adjust as high as 7.75% ($11,858.79 IO).  After the first change, the maximum

amount the loan can adjust on any change date is 2%. The floor interest rate is 2.5% and the ceiling

is 11.75% ($17,979.46 IO or $18,534.78 amortized 30). The payment based on the cap rate is more

than double the initial payment.

11. Plaintiffs are informed and therefore believe that Defendant JP, a Business

EXHIBIT 1
11

Entity, form unknown, is a corporation, authorized to do business in the State of California. JP is the alleged original mortgage "Lender", original/master servicer, and custodian of the Note for purposes of the illegal foreclosure proceedings, with a business address of: 1111 Polaris Parkway, Columbus, OH 43240.

12. Plaintiffs are informed and therefore believe that Defendant FIRST AMERICAN TITLE COMPANY, (hereinafter referred to as "FIRST"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California. FIRST is the escrow/title company and original trustee for the loan, with a known business address of 2 First American Way, Santa Ana, CA 92707.

13. Plaintiffs are informed and therefore believe that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California. MERS was the original nominee/beneficiary for the loan, with a mailing address of PO Box 2026, Flint, MI 48051.

14. Plaintiffs are informed and therefore believe that Defendant PINNACE FINANCIAL (hereinafter referred to as "PINNACLE"), a Business entity, form unknown, is corporation, authorized to do business in the State of California. PINNACLE was the broker for the loan, with an unknown business address.

15. Plaintiffs are informed and therefore believe that Defendant JP MORGAN MORTGAGE ACQUISITION CORP. (hereinafter referred to as "MORTGAGE"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California. MORTGAGE was the sponsor/seller of the note, an unknown business address.

16. Plaintiffs are informed and therefore believe that Defendant JP MORGAN ACCEPTANCE

EXHIBIT 1
12

CORPORATION I (hereinafter referred to as "MAC"), a Business Entity, form unknown, is authorized to do business in the State of California. MAC is the depositor, with an unknown business address.

17. Plaintiffs are informed and therefore believe that Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY (hereinafter referred to as "DEUTSCHE"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California, with an unknown business address.

18. Plaintiffs are informed and therefore believe that Defendant JP MORGAN MORTGAGE ACQUISITION TRUST 2007-CH1 (hereinafter referred to as "TRUST") a Business Entity, form unknown, is authorized to do business in the State of California. TRUST is the issuing entity, with an unknown business address.

19. The Defendants (each of them named in paragraphs 1 through 19 above, shall collectively be referred to as " DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title thereto and as DOES I through 100 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiffs' title and their claims and each of them constitute a cloud on Plaintiffs' title to the Subject Property. Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendants when ascertained.

EXHIBIT 1
13

20. Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

21. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## GENERAL ALLEGATIONS

22. Due to the Defendants' attempt to execute on the Contract entered into with the Plaintiffs on or about December 14, 2006, they had a duty to respond and answer. The Defendants breeched their duty, having been Noticed, by neglecting to respond to the request for Clarification.

23. Plaintiffs extended generous commercial grace to the Defendants to respond to the their request for Clarification in the event it was lost or misplaced.

24. Due to the Defendants' breech of known duty to respond and their subsequent Default; they have tacitly agreed that their Contract concerning the Real Property in question is unenforceable and have agreed that Plaintiffs may exercise their Power of Attorney to execute documents concerning the Real Property in question.

EXHIBIT 1
14

25. Under the Equal Opportunity Credit Act, an Alleged Borrower is entitled to the same terms of credit issuance that another Alleged Borrower of equal characteristics is entitled to. Here, JP placed Alleged Borrowers into a loan that had a significantly higher interest rate than what was qualified for.

26. In order to approve and properly provide a repayments system to Plaintiffs with appropriate and fair terms, it is the responsibility of the alleged "Lender" to verify that the Plaintiffs have the ability to repay the credit that has been extended. A departure such as this, from the fundamental principles of loan underwriting, forms the basis of abusive, deceptive and predatory lending. Lending without a determination that a Alleged Borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying instead on the foreclosure value of the Alleged Borrowers' collateral to recover principal, interest and fees.

27. The underwriting on this loan was flawed. There was very little determination of the Plaintiffs to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law. This disregard for the Alleged Borrower leads to the potential for legal action under many different legal statutes, UDAP laws, and common law principles. This disregard for the Alleged Borrower has lead to this legal action under many different legal statutes, UDAP laws, and common law principles.

28. Normal underwriting practices include analysis for a 28/36% debt-to-income ratio. During 2003 to 2006, subprime lending involved higher Debt to Income ("DTI") ratios, from 33/38% to 38/50%. JP's underwriting standard for this loan far exceeded normal underwriting practices for normal and subprime loans. JP simply used a verification of employment, a credit score and stated

EXHIBIT 1
15

income, but neither tax returns, nor the past two (2) years W2's to complete the income verification process. If an underwriter has evaluated the loan properly, then there should be no question of the ability of the Alleged Borrower to repay the loan. Debt ratios were not evaluated, credit not carefully reviewed nor was a proper determination of risk made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

29. JP extended this loan to Plaintiffs without a determination that the Alleged Borrowers could reasonably be expected to repay the loan from the available monthly resources, other than the collateral securing the loan, and relied instead on the foreclosure value of Plaintiffs' collateral to recover principal, interest and fees. This is extremely deceptive and unfair. JP was quite aware of the certainty that Plaintiffs would default and that foreclosure proceedings would be forthcoming at the time they approved Plaintiffs for this loan.

30. As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; and the Code of Federal Regulations § 226.23(3), among others.

31. Specifically, one of the key consumer protections under RESPA is the ability of a borrower to
send a Qualified Written Request ("QWR") to its loan servicer asking for an accounting of all money owing, late fees charged, etc. When the borrower sends a QWR to its lender, the lender has 20 days to acknowledge receipt of the QWR and 60 days to provide a substantive response. On March 2,

EXHIBIT 1
16

2011, Plaintiff sent a QWR to Defendants JP Morgan Chase Bank, N.A. and California Reconveyance Company, who at the time had been appointed by JP Morgan Chase Bank, N.A. as the sub-servicer and trustee for the alleged subject loan. Rather than respond to Plaintiff's QWR, California Reconveyance Company response to the QWR was inadequate. In addition, California Reconveyance Company failed to provide Plaintiff with several of the documents requested. Notably, Plaintiff requested documentation reflecting the identity of the true owner and holder of the Note and mortgage as set forth below. JP Morgan Chase Bank, N.A. failed to provide information.   **See Exhibit "1" attached hereto,.**

## JURISDICTION

32. The transactions and events which are the subject matter of this Complaint all occurred within the County of Orange, State of California.

33. The Subject Property is located within the County of Orange, State of California.

## FACTUAL ALLEGATIONS

34. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

35. Due to JP having breeched their duty to respond, there is in existence a "Meeting of the Minds" between the two Parties. This new Agreement between the Parties stipulates in part that there was a voidable Contact originally set forth.

36. As the original Contract has been agreed to be voidable, thus unenforceable, JP breeched

EXHIBIT 1
17

this new Agreement between the Parties by selling an interest in a Deed of Trust which was null and void.

37. Therefore, JP is not only in breech of the new Agreement between the Parties, but is also liable for trespass upon the Agreement, trespass of their Assigns and Agents upon the Agreement and counterfeit securities offered for sale in the market. (USC Title 18, Section 472)

38. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including JP, TITLE, MERS, PINNACLE, MORTGAGE, MAC, TRUST, DEUTSCHE and UNKNOWN DEFENDANTS, failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within. As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

39. Plaintiffs were not in a position to qualify for the loan based upon their financial condition. Plaintiffs were given a loan that was an inappropriate under their circumstances. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiffs could have qualified.

40. JP qualified the borrowers on the interest only payment to make sure that the borrowers fit into the product guidelines. The interest rate is based on the 12-month LIBOR plus a margin of 2.5%. On the first change, the loan can adjust as high as 7.75% ($11,858.79 IO). After the first change, the maximum amount the loan can adjust on any change date is 2%. The floor interest rate is 2.5% and the ceiling is 11.75% ($17,979.46 IO or $18,534.78 amortized 30). The payment based on the cap rate is more than double the initial payment. Not using the worst case rate to qualify the borrower insures that the borrower will experience Extreme Payment Shock because the income of

EXHIBIT 1
18

the borrower in most cases will not increase at the same rate of the new adjusted payment. There was additional documentation provided by the borrower regarding the payment of taxes and their escrow account with their current servicer. There were several errors made in accounting from late 2009-early 2010 by the servicer. It appears that most of the charges have been waived. The borrower paid 3 payments that were supposed to be paid into their escrow account to pay for insurance and taxes. However, it appears that the bank deposited the monies into their personal accounts instead of their escrow account. This is a banking error and if any fees were charged as a result, the bank should remedy this. The national average fixed rate with week ending 11/17/2006 is 6.24%. The payment would be $11,293.86 for the 30 year fixed rate at 6.24% which is higher than both the fully amortized payment and the interest only payment for the original loan. However, over the life of the loan is where you really see the difference. The interest paid for the 3 year ARM, 10 year IO is $4,656,413.74. Whereas on the 30 year fixed rate the total amount of interest paid over the life of the loan is $2,229,589.47. That is a difference of $2,426,824.27.

41. These acts of deception violate several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by JP evidenced by their failure to realistically verify Alleged Borrowers' income utilizing signed IRS Income Tax Disclosure Form 4506T, which would have provided past Alleged Borrowers' tax returns, nor verify income or employment.

42. In addition, and unbeknownst to Plaintiffs, JP illegally, deceptively and/or otherwise unjustly qualified Plaintiffs for a loan which JP knew or should have known that Plaintiffs could not qualify for or afford, for example, the underwriter had approved this loan based upon Plaintiffs providing no documentation for employment verification or proof of earnings. Had JP used a more accurate and

EXHIBIT 1
19

appropriate factor, such as Tax Forms, W-2s, or employment verification, and a more determinative level of scrutiny of determining the debt to income ratio, Plaintiffs would not have qualified for the loan in the first place. JP ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiffs' rights sold Plaintiffs a deceptive loan product.

43. The only payment that is disclosed to the borrowers on any of the legal documents is the beginning I/O monthly payment, $1,575.00, and not the maximum or fully indexed payment.

44. There was no determination of the ability of the Alleged Borrowers to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

45. Plaintiffs are informed and believe and therefore allege that based on a Real Income Analysis, with the type of take home income Plaintiffs possesses and that was clearly disclosed to Defendants, that the Alleged Borrowers would not be able to support the home payment over an extended period.

46. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

47. The Defendants targeted inappropriate or excessively expensive credit products to the Plaintiffs, who are not financially sophisticated, who may be otherwise vulnerable to abusive practices, and to persons who could qualify for mainstream credit products and terms.

48. The purpose of entering into the above-described mortgage loan transaction was for Plaintiffs

EXHIBIT 1
20

to eventually own the Subject Property.   That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

49. An expert, certified, forensic audit of the Plaintiffs' loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiffs' loan:

50. Plaintiffs are informed and believe and therefore allege that the underwriter approved this loan based only upon a stated income and a belief that the property would continue to increase in value and that the Plaintiffs should have been declined for this loan.

51. Plaintiffs are informed and believe and therefore allege that this loan also contained inconsistent Truth In Lending Disclosures.

52.  Defendants did not provide Plaintiffs with a Notice of Right to Cancel, as required by TILA.

53. Defendants did not provide Plaintiffs with a correctly identified payment schedule, as required by TILA.

54. Defendants did not provide Plaintiffs with a consistent and properly disclosed interest rate,
        as
required by TILA.

55. Defendants did not provide Plaintiffs with good faith estimates of disclosures within three days of application.

56. Defendants did not provide Plaintiffs with the Consumer Handbook on Adjustable Rate Mortgages within three days of application.

57. Defendants did not provide Plaintiffs with an adequate disclosure of the Interest-Only payment feature, as required by TILA.

58. Defendants did not provide Plaintiffs with an itemization of the amount financed, as required

EXHIBIT 1
21

by TILA.

59. Defendants did not provide Plaintiffs with a Property/Hazard Insurance Disclosure as required by TILA.

60.  Defendants did not provide Plaintiffs with a disclosure of the legal obligations between the parties  as required by TILA.

61. Plaintiffs are informed and believes and therefore allege that  Defendants failed to disclose all affiliated business arrangements regarding the loan as required by TILA.

62. Plaintiffs are informed and believe and thereon allege that Defendants failed to adequately disclose APR and finance charge calculations as required by TILA.

63. Plaintiffs are informed and believe and therefore allege that  Defendants charged fees in excess of the reasonable value of the goods provided and/or services rendered as required by TILA.

64. Plaintiffs are informed and believe and therefore allege that  Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs will or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the Alleged Borrowers to not place them in that loan (in harms way).

65. Plaintiffs are informed and believe and therefore allege that it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood.

66. Plaintiffs are informed and believe and therefore allege that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

EXHIBIT 1
22

67. Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the Alleged Borrower of loan transactions in violation of the Federal Trade Commission Act.

68. Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices (UDAP) statutes.

69. When the loan was sold to each entity, there were no Assignments of the Deed of Trust to any entity at the time of the sale. Therefore, "True Sales" could not occur despite there being required a perfected "Chain of Title" by most Pooling and Servicing Agreements.

70. There is no complete Chain of Title for the Deed. The Deed and Note are separated. The actual Note does not have the full Chain of Endorsements as required by the Pooling and Servicing Agreement.

71. The Deed and the Note are separated from each other as the result of the improper Securitization of the loan.

### SECURITIZATION & THE PSA's

72. As set forth above, Defendants, and each of them, violated the express terms of the Pooling and Service Agreement ("PSA") which is a Trust Agreement required to be filed under oath with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization

EXHIBIT 1
23

transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

73. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to alleged "Lenders" for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Alleged "Lenders" would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

74. A "True Sale" of the loan would be a circumstance whereby one party owned the Note, and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and each Note is required to be endorsed to the next party for a valid "True Sale" to occur.

75. In order for the Trustee of the Securitized Trust to have a valid and enforceable secured claim against Plaintiffs' real property, the Trustee must prove and certify to all parties that, among other things required under the PSA:

76. There was a complete and unbroken chain of endorsements and transfers of the Note from

EXHIBIT 1
24

and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below);

77. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, Plaintiffs allege that the Trust cannot demonstrate that it had perfected its security interest in Plaintiffs' real property that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the Trust closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

78. Plaintiffs are informed and therefore believe, and thereon allege, that pursuant to the terms of the PSA, the Mortgage Originator (ie, the original alleged "Lender" herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loans (NOTE) of Plaintiffs herein and all other mortgage loans identified in the PSA.

79. Plaintiffs are further informed and believe, and thereon allege that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a bona fide or 'True Sale.' Since, as alleged herein, True Sales did not actually occur, Plaintiffs allege that the Defendant Trustee is estopped and precluded from asserting any secured or unsecured claim in this case.

80. Plaintiffs are further informed and believe, and thereon allege, that as a result of the PSA

EXHIBIT 1
25

and other documents signed under oath in relation thereto, the Mortgage Originator (JP), Sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust ("DOT") on the Plaintiffs' residential real estate herein.

81. Plaintiffs are informed and believes, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, was never actually transferred and delivered by the Mortgage Originator (JP) to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust, but, rather, were endorsed in blank and then delivered to the possession of the Mortgage Note Custodian or Mortgage Servicer. Specifically, Plaintiffs further allege, upon information and belief, that various provisions of the PSA herein set forth a very specific procedure for conveyance of the mortgage loans into the PSA which includes, but is not limited to delivering the original mortgage loan agreement with proper endorsements to the Trust.

## RECENT DEVELOPMENTS AND DOCUMENT FRAUD

82. On September 24, 2010, California Attorney General, Jerry Brown ("AG"), directed ALLY Financial, Inc., which owns GMAC, Mortgage LLC, to stop foreclosures in California until it proves it is complying with State law.

83. On October 1, 2010, the AG similarly requested that J.P. Chase Morgan stop foreclosures in California until it proves it is complying with State law.

84. Since then, Bank of America has halted foreclosures in 23 judicial foreclosure States. On or about October 11, 2010, Bank of America announced that it is temporarily halting foreclosures nationwide. U.S. BANK NATIONAL ASSOCIATION, trustee vs. Antonio IBANEZ (and a consolidated case). For ABFC 2005-OPT 1 Trust, ABFC Asset Backed Certificates, Series 2005-OPT 1. After foreclosing on two properties and purchasing the properties back at the foreclosure

EXHIBIT 1
26

sales, U.S. Bank National Association (U.S. Bank), as trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z; and Wells Fargo Bank, N.A. (Wells Fargo), as trustee for ABFC 2005-OPT 1 Trust, ABFC Asset Backed Certificates, Series 2005-OPT 1 (Plaintiffs) filed separate complaints in the Land Court asking a judge to declare that they held clear title to the properties in fee simple. We agree with the judge that the Plaintiffs, who were not the original mortgagees, failed to make the required showing that they were the holders of the mortgages at the time of foreclosure. As a result, they did not demonstrate that the foreclosure sales were valid to convey title to the subject properties, and their requests for a declaration of clear title were properly denied.

85. The impetus of these necessary but drastic measures stems from allegations of document fraud on the part of the banks and their servicers. This epidemic is not limited to the  banks  listed above, but is an industry wide problem.

86. During the securitization era, Banks and the resulting trusts, in the rush to securitized mortgages and sell them to investors, routinely ignored the critical step  of obtaining mortgage assignments from the original alleged "Lenders" to the securities companies to the trusts.

87. Now, years later, when the companies "servicing" the trusts need to foreclose, there are no documents available to document the proper chain of title because none were originally created.  As a result, banks are creating the missing documents or outsourcing the documents to companies like Alleged "Lender" Processing Services to produce the needed assignments.  This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn deposition testimony to signing more than 500 documents a day and up to 10,000 documents a month related to foreclosures without reviewing them. Bryan Bly a well known Robo- signer of

EXHIBIT 1
27

Nationwide Title Clearing on November 24, 2010 for the case of Deutsche Bank v Peter Malone admitted in sworn testimony to signing of more than 5000 documents per day and reviewing each document for less than one minute. The assignments were routed to him in batches of 200 or more to be signed as a Vice President or as a notary. He signed as a Vice President in excess of 20 different financial firms.

88. Due to the strict timelines and guidelines to complete a foreclosure, banks are also fabricating other documents to comply with California's foreclosure guidelines.

89. The impact of these allegations is so cogent that Old Republic National Title Company will no longer insure the title on homes foreclosed by J.P. Morgan Chase or GMAC, Mortgage LLC.

90. Plaintiffs are informed and believe, and therefore allege, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business act or practice an unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code §17200 and the Unfair and Deceptive Acts and Practices statutes.

## DEFENDANT MERS CANNOT BE A REAL PARTY IN INTEREST IN A SECURITIZED MORTGAGE

85.   Since the creation of Plaintiffs' Note herein and Deed of Trust, Defendant MERS was the named beneficiary and "nominee" of the DOT.

86.   Plaintiffs are informed and believe, and thereon allege, that Defendant MERS lacked (and continues to lack) the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities.

EXHIBIT 1
28

87.     Plaintiffs are informed and believe, and thereon allege, that in order to conduct a foreclosure action, a person or entity must have standing.

88.     Plaintiffs are informed and believe, and thereon allege, the pursuant to California law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee.  Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

89.     As will be discussed in greater detail herein below, the notes in this action identify the entity to whom they were payable, the original lender, JP.  Therefore, the Note herein cannot be transferred unless it is endorsed.  As will also be discussed herein in greater detail, the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

90.     Furthermore, insofar as the parties to the securitization of Plaintiffs' Note and Deed of Trust base their claim that the Note was transferred or assigned to Defendant DEUTSCHE, the Trustee of the Securitized Mortgage herein, by Defendant MERS, it is well established federal and California state law that the assignment of a Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

91.     Pursuant to California law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee.  Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, or as unperfected.  The Note herein specifically identifies the party to whom it was payable, to wit, JP and the Note, therefore, cannot be transferred unless it is endorsed.

EXHIBIT 1
29

92.     MERS has only acted as a 'nominee' for COUNTRYWIDE under the DOT. Defendants, and each of them, cannot produce any evidence that the promissory note has been transferred; therefore, Defendant MERS could only transfer whatever interest it had in the DOT herein. The promissory note and Deed of Trust are inseparable:  an assignment of the note carries the mortgage (ie, Deed of Trust) with it, while an assignment of the Deed of Trust alone is a nullity. Therefore, if one party receives the note and another party receives the Deed of Trust (as in this case), the holder of the note prevails regardless of the order in which the interests were transferred.

93.     Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under California law.   Therefore, none of the DEFENDANTS, collectively nor individually, can establish that it is entitled to assert a claim in this case.  For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

## FIRST CAUSE OF ACTION

### Declaratory Relief

### (Against All  Defendants)

94) Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully
        set
forth herein.

95) An actual controversy has arisen and now exists between Plaintiffs and  Defendants regarding their respective rights and duties, in that Plaintiffs contends that  Defendants do not have the right to foreclose on the Subject Property because  Defendants security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations

EXHIBIT 1
30

3500.10, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies.

96) Plaintiffs further contend that  Defendants do not have the right to foreclose on the Subject

Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

97) Plaintiffs requests that this Court find the purported power of sale contained in the Loan of

no force and effect at this time, because  Defendants' actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect Alleged Borrower, which has directly caused Plaintiffs to be at an equitable disadvantage to  Defendants.  Plaintiffs further request that title to the Subject Property remain in Plaintiffs name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation.

98) As a result of the  Defendants' actions, Plaintiffs have suffered damages according to proof,

and seek declaratory relief that  Defendants' purported power of sale is void and has no force or effect against the Subject Property.

99) Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

//

EXHIBIT 1
31

//

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

100)   Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

101)   Defendants have commenced a foreclosure action under the Note and will or have scheduled a non-judicial sale. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique.

102)   The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose their home.

103)   Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

EXHIBIT 1
32

104)   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105)   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.   This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.   The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

106)   Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint.   Defendants were required to exercise such power in good faith.  Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:

    I.   Willfully withheld numerous disclosures;

    II.   Willfully withheld notices in regard to excessive fees and finance charges and broker fees, Underwriting standards, Good Faith Estimates, and failure to disclose when negative credit scores were disseminated;

    III.   Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

107)   As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury and

EXHIBIT 1

33

have caused Plaintiffs the threat of loss of Plaintiffs' personal home.  Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

108)    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

109)    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110)    The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

111)    Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other alleged "Lenders". It also requires the alleged "Lender" to

EXHIBIT 1
34

offer other loan products that might be more advantageous for the Alleged Borrower under the same qualifying matrix.

112) Defendants did not provide Plaintiffs with a Notice of Right to Cancel, as required by TILA.

113) Defendants did not provide Plaintiffs with a correctly identified payment schedule, as required by TILA.

114) Defendants did not provide Plaintiffs with good faith estimates of disclosures within 3 days of loan application.

115) Defendants did not provide Plaintiffs with the Consumer Handbook on Adjustable Mortgages within 3 days of application.

116) Defendants did not provide Plaintiffs with an adequate disclosure of the Interest-Only payment feature, as required by TILA.

117) Defendants did not provide Plaintiffs with an itemization of the amount financed, as required by TILA.

118) Defendants did not provide Plaintiffs with a Property/Hazard Insurance Disclosure as required by TILA.

119) Defendants did not provide Plaintiffs with a disclosure of the legal obligations between the parties  as required by TILA.

120) Plaintiffs are informed and believe and therefore allege that  Defendants failed to

EXHIBIT 1
35

provide Plaintiffs with a special information booklet explaining the settlement costs within three business days after Plaintiffs submitted his loan application as required by TILA.

121)     Plaintiffs are informed and believes and therefore allege that Defendants failed to disclose all affiliated business arrangements regarding the loan as required by TILA.

122)     Plaintiffs are informed and believe and thereon allege that Defendants failed to adequately disclose APR and finance charge calculations as required by TILA.

123)     Plaintiffs are informed and believe and therefore allege that Defendants charged fees in excess of the reasonable value of the goods provided and/or services rendered as required by TILA.

124)     Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

125)     The ability to repay the loan is addressed in TILA 226.34(A)(4), which states, "Whether a creditor is engaging or has engaged in a pattern or practice of violations of this section depends on the totality of the circumstances in the particular case." While a pattern or practice is not established by isolated, random, or accidental acts, it can be established without the use of a statistical process. In addition, a creditor might act under a lending policy (whether written or unwritten) and that action alone establishes a pattern or practice of making loans in violation of this section.

126)     In transactions where the creditor sets an initial interest rate to be adjusted later (whether fixed or to be determined by an index or formula), in determining repayment ability the creditor must consider the consumer's ability to make loan payments based on the non-discounted or fully-indexed rate at the time of consummation. Here, there was no determination of the Plaintiffs'

EXHIBIT 1
36

1   ability to repay the loan except a credit score, employment verification and stated income. The

2   Defendants knew the loan would eventually fail, and absolutely withheld that fact to Plaintiffs.

3   127)   Creditors may verify and document a consumer's repayment ability in various ways.

4

5   A creditor may verify and document a consumer's income and current obligations through any reliable

6   source that provides the creditor with a reasonable basis for believing that there are sufficient funds

7   to support the loan. Reliable sources include, but are not limited to, a credit report, tax returns,

8   pension statements, and payment records for employment income.

9

10   128)   An actual controversy now exists between Plaintiffs, who contends they have the

11   right to rescind the loan on the Subject Property alleged in this Complaint, and based on

12   information and belief, Defendants deny that right.

13   129)   As a direct and proximate result of Defendants' violations Plaintiffs have incurred

14

15   and continue to incur damages in an amount according to proof but not yet ascertained including

16   without limitation, statutory damages and all amounts paid or to be paid in connection with the

17   transaction.

18   130)   Defendants were unjustly enriched at the expense of Plaintiffs who are therefore

19

20   entitled to equitable restitution and disgorgement of profits obtained by Defendants.

21   131)   Defendants' actions in this matter have been willful, knowing, malicious,

22   fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to

23

24   punish Defendants and to deter others from engaging in the same behavior.

25   WHEREFORE, Plaintiffs pray for relief as set forth below.

26   **FIFTH CAUSE OF ACTION**

27   **Violation of Real Estate Settlement and Procedures Act (RESPA)**

28

EXHIBIT 1
37

(Against All Defendants)

132) Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

133) RESPA applies because a alleged "Lender" that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§ 2601-2617. JP is subject to RESPA.

134) Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of alleged "Lender" payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

135) Here, Defendants gave, provided, or received a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums, in violation of 24 C.F.R. § 3500.14.

EXHIBIT 1
38

136)   Defendants did not properly and expediently pay for property taxes, insurance, and other charges for which Defendants are collecting within an escrow impound accounts; and/or other servicing violations (24 C.F.R. § 3500.17). **See Exhibit "2" attached hereto.**

137)   Defendants failed to provide the HUD-1 at closing per 24 C.F.R. § 3500.8(b).

138)   Defendants charged fees in excess of the reasonable value of goods provided and/or services rendered.

139.   Defendants and/or their agents acting in concert and for common purpose violated RESPA by transferring the servicing rights without giving notice to Plaintiff, loan borrower.

140.   A violation of RESPA is also made unlawful under California state law "Any person who violates any provision of [RESPA] or any regulation promulgated hereunder, violates this division."

141.   On or about March 2, 2011, Plaintiff, sent defendant JP Morgan Chase Bank, N.A and California Reconveyance Company the QWR as defined under RESPA, 12 U.SC. § 2605(e)(1)(B), regarding the crediting of payments on his mortgage account and asking for an accounting, as well as a demand for a copy of the Note with any modifications, and a beneficiary statement.   **See Exhibit "2" attached hereto ,,**

142.   In the Qualified Written Request, Plaintiff stated belief the account in connection with the Subject Loan was not in default regarding the amounts defendants herein claimed to be owing, and requested that defendants herein correct the error. Plaintiff further requested that defendants herein provide him with information and documentation supporting the claim that Plaintiff's account was in default.

143.   California Reconveyance Company violated RESPA, 12 U.SC. § 2605(e)(2) (C) , by failing to provide Plaintiff with the information and documentation requested, or an explanation of why the information sought was unavailable.

144.   Defendants JP Morgan Chase Bank, N.A and California Reconveyance Company

**EXHIBIT 1**
39

1  violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the

2  Plaintiff's account in response to the Qualified Written Request, including the crediting of any late

3  charges or penalties, and failing to transmit written notice of such corrections to the Plaintiff no

4  later than 60 days after receipt of the Plaintiffs Qualified Written Request.

5      145.     Defendants JP Morgan Chase Bank, N.A and California Reconveyance Company

6  violated RESPA, 12 U.SC. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure

7  proceedings after receiving the Plaintiffs qualified written request by continuing to threaten

8  foreclosure.

9      146.     Upon information and belief, Defendants JP Morgan Chase Bank, N.A and California

10  Reconveyance Company violated RESPA, 12 U.SC. 2605(e)(3), by providing information to consumer

11  reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to

12  qualified written request.

13      147.     Defendants named herein have engaged in a pattern or practice of non-compliance with

14  the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 and

15  have and continue to conceal information.

16      148.     As a proximate result of Defendants' actions, Plaintiffs have been damages in an

17  amount not yet ascertained, to be proven at trial.

18          WHEREFORE, Plaintiffs pray for relief as set forth below.

19

20                      **SIXTH CAUSE OF ACTION**

21          **Violation of California Civil Code § 1918.5-1921.1920**

22                  **(Against All Defendants)**

23      149.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

24
25  fully set forth herein.

26      150.     According to California Civil Code § 1918.5-1921.1920(a) any mortgage instrument

27

28

EXHIBIT 1
40

that is made pursuant to the provisions of this chapter shall meet the following requirements: Standards for the adjustment of interest rates or monthly payments shall consider factors, which can reasonably be deemed to affect the ability of Alleged Borrower to meet their mortgage obligations.

151.   This loan was based only upon a credit score, stated income (without verification) and a belief that the property would continue to increase in value.  No consideration of the ability of Plaintiffs to repay this loan with a realistic means test has been made.

152.   Additional documentation was available in the form of W-2's, income information, tax records, etc. to determine the ability of the Alleged Borrowers to repay the loan.  The failure to do so by Defendants violates California Civil Code § 1918.5-1921.1920.

153.   As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SEVENTH CAUSE OF ACTION

#### Violation of California Civil Code § 1916.7 10(e) *INDEX*

#### (Against All  Defendants)

154.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.   Adjustments to interest rate of an adjustable-payment, adjustable-rate mortgage loan must correspond directly to the movement of an index which is selected, but not controlled, by the alleged "Lender". Any adjustments to the interest rate are subject to limitations provided in the loan contract. If the index moves down, the alleged "Lender" must reduce the interest rate by at least the

EXHIBIT 1
41

decrease in the index. If the index moves up, the alleged "Lender" has the right to increase the interest rate by that amount.

156. Here, the Adjustable Rate Note provided by JP states that the Interest rate will never be greater than 11.75%. By restricting the downward adjustment regardless of the downward movement of the index is in violation of California Civil Code CIV § 1916.7 10 (c) *INDEX*.

157. As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## EIGHTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7b(2)

### (Against All Defendants)

158. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159. Changes in interest and monthly payment shall not occur more often than twice during any annual period and at least six months shall elapse between any two changes. The rate of interest and monthly payments shall not change during the first semiannual period. The amount of any increase in monthly payment shall not exceed 7.5 percent annually.

160. ARM mortgages are tied to indexes that can change monthly. As the index changes, so does the interest rate. Therefore, by the fact that the interest rate can change monthly, the ARM Mortgage is in violation of the above statute. Here, the Adjustable Rate Mortgage Note disclosed

EXHIBIT 1
42

that the payments adjust monthly and not semiannually as mandated by this subsection and therefore is in violation.

161. As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

//

## NINTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7 B

### (Against All Defendants)

162. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

163. Violation of California Civil Code § 1916.7 B states that: "the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal. In no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination".

164. The current loan is a negative amortizing loan and subject to the loan to value being greater that the original loan to value. As each minimum payment is made, the balance increases, increasing the loan to value ratio, thus violation thus violating the above-statute.

165. As a proximate result of Defendants' actions, Plaintiffs have been damaged in an

EXHIBIT 1
43

1  amount not yet ascertained, to be proven at trial.

2        WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

3  set forth herein.

4

5  ### TENTH CAUSE OF ACTION

6  ### Rescission

7  ### (Against All Defendants)

8
9  166.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

10  fully set forth herein.

11  167.     Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA

12  Violations; 2) RESPA; 3) Fraudulent Concealment / Fraudulently Procured Documents; 4) Public

13  Policy Grounds and 5) Improper Securitization, each of which provides independent grounds for

14
15  relief.

16  168.     The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiffs' right to rescind

17  a loan to three years from the date of closing if the Alleged Borrower received false or incomplete

18
19  disclosures of either the loans terms or Alleged Borrower' right to rescind. Here, Defendants have

20  failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial

21  TILA disclosures, and lack of diligence and collusion on the part of the broker, alleged "Lender" and

22  underwriter to place Plaintiffs in a loan they could not afford and would ultimately benefit

23  Defendants following the anticipated and desired foreclosure proceedings.

24
25  169.     The public interest would be prejudiced by permitting the alleged contract to stand;

26  Such action would regard an unscrupulous alleged "Lender".

27  170.     As a proximate result of Defendants' actions, Plaintiffs have been damaged in an

28

EXHIBIT 1
44

amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs prays for rescission of the stated loan in its entirety.

## ELEVENTH CAUSE OF ACTION

**Violation of California Business and Professions Code § 17200;**
**Unfair and Deceptive Business Acts and Practices**
**[False &/or Fraudulently Procured Documents]**

### (Against All  Defendants)

171.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

172.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

173.     The above specified  Defendants, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, California Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in California in violation of California *Penal Code* §115.5.   The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practice.

174.     The business practices of the above specified  Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above. Further, the above specified  Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged

EXHIBIT 1
45

175. Pursuant to Sections 17200 et seq. of the California *Business and Professions Code*, unfair business practices include any unlawful, unfair, misleading or fraudulent business practice.   The fraudulent and unlawful conduct of the above specified  Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provisions of §§17200 et seq of the California *Business and Professions Code*.

176.    As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Plaintiffs have incurred damages in that Plaintiffs' real property is now subject to foreclosure at the hands of the above specified  Defendants, and each of them, all by reason of which Plaintiffs have been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.   Accordingly, Plaintiffs are entitled to restitution, interest, attorney's fees and costs.

177.    As a further direct and proximate result of the unfair business practices of the above specified  Defendants, and each of them, Plaintiffs are entitled to an order or preliminary injunction prohibiting said  Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Subject Property.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## TWELFTH CAUSE OF ACTION

### Cancellation of a Written Instrument

### (Against All  Defendants)

178.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

EXHIBIT 1
46

179.     On or about December 14, 2006 as alleged hereinabove, Plaintiffs executed written instruments, including but not limited to a Note and a Deed of Trust securing a Note in the amounts of $1,836,200.00 secured by the Subject Property.

180.     The Deed of Trust is void and/or voidable for the reasons set forth hereinabove.

181.     Deed of Trust is a contract.  Law prescribes a set of provisions for a Contract to be Legal and enforceable.  Lack of any of these provisions render that Contract null and void.

182.     The Deed of Trust executed on or about December 14, 2006, is null and void for its lack of sufficient aspects of a contract.  To whit:

1.  JP was not in a position to act as a Principle to the real estate transaction between the Buyer and the Seller of the property.  JP simply acted in a broker/facilitator capacity therefore was erroneous attempting to insert themselves as a Principle in the transaction.

2.  As JP is legally not qualified or allowed to lend its own money (UCC Title 12, Section 83), WAMU has not given any consideration to the purported contract (Deed of    Trust).

3.  JP did not fulfill the "meeting of the minds" requirement of a contract as they purposely withheld pertinent information with regard to the Deed of Trust Contract executed by the Plaintiffs.

4.  JP did not sign the Deed of Trust Contract.

183.     Plaintiffs are, therefore, entitled to have this Deed of Trust adjudged void and/or voidable and cancelled, pursuant to California Civil Code §3412.

## THIRTEENTH CAUSE OF ACTION

EXHIBIT 1
47

**Breach of Fiduciary Duty**

(Against  Defendants)

184.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

185.     Defendants owed a fiduciary duty to Plaintiffs and breached that duty by failing to advise or notify Plaintiffs when  Defendants knew or should have known that Plaintiffs will or have a likelihood of defaulting on the loan,  Defendants have a fiduciary duty  to the Alleged Borrower to not place them in that loan (in harms way).

186.     Regarding this loan, it was in the best interest of the  Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Alleged Borrower.

187.     Defendants failed to provide material disclosures regarding the loan, its fees, its structure, Plaintiffs rights and the loan's interest rate to Plaintiffs while in the capacity of Plaintiffs' Alleged "Lender".

188.     Defendants failed to fully comply with TILA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home.  Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**FOURTEENTH CAUSE OF ACTION**

**Unconscionability – UCC-2-3202**

(Against All  Defendants)

EXHIBIT 1
48

189.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

190.  If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

191.     When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

192.  Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, public policy grounds and federal standards that the Defendants were required to follow; coupled with the windfall that the  Defendants reaped financially from their predatory  practices upon Plaintiffs, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs prays for restitution and relief as set forth below.

### FIFTEENTH CAUSE OF ACTION

**Predatory Lending**

**(Against All  Defendants)**

193.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

194.     The Office of Comptroller of the Currency defines Predatory Lending as any lien

EXHIBIT 1
49

secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices.

195. Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable.

196. This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan.

197. The loan does not plainly and prominently disclose on the good faith estimate of fees and costs paid directly or indirectly, in whole or in part, to a mortgage loan officer.

198. This loan is underwritten without due diligence by the party originating the loan. There has been no realistic means test for determining the ability of the Alleged Borrower to repay the loan. Further, there is a lack of documentation of income or asset.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTEENTH CAUSE OF ACTION

### Quiet Title: Lack of Standing

### (All Defendants Claiming Any Interest In the Subject Property)

199. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiffs allege lack of standing of Defendant in that there is no recorded assignment from the original trustee, TITLE to the foreclosing trustee, DEUTSCHE. The public

EXHIBIT 1
50

records do not reflect that the subject property at issue was ever conveyed either by JP or ... and the subject property was not conveyed by Assignment of the Deed of Trust, and the public records of Orange County Recorder do not show that an Assignment of the Deed of trust was every executed and recorded. Plaintiffs allege that because the Deed of Trust does not contain the Power of Sale clause and if there is no Power of Sale clause in the mortgage document, the lender must go through the judicial foreclosure process in order to foreclose on the property.

200.     Plaintiffs are at all times herein mentioned the owner and/or entitled to possession of the Property until the date of sale that has, or may, transfer physical possession of the deed of trust to a non-bonafide subsequent purchaser.

201. Plaintiffs are informed and therefore believe and thereupon allege that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs. However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants are without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

202. Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTEENTH CAUSE OF ACTION

### Wrongful Foreclosure

EXHIBIT 1
51

(Against DEFENDANTS and all other Defendants Claiming Any Interest In the Subject Property or alleging possession of the Power of Sale of the Subject Property)

203.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

204.   As a proximate result of the negligent or reckless conduct of the Defendants the Plaintiffs' credit has been impaired and they are threatened with the eminent loss of their property despite the fact that they have been victimized by the allegations contained herein.

205. DEFENDANTS implemented a non-judicial foreclosure sale against Plaintiffs in light of the egregious actions undertaken by Defendants to receive a purported power of sale in light of the fact that the Defendants are not holder in due course of the Note.

206.   As alleged herein, Plaintiffs believe that the foreclosing entities are unlawful in filing a Notice of Default on the Subject Property and Defendants do not have the legal authority to go forward with a sale.

207. Plaintiffs allege wrongful foreclosure by the non-judicial foreclosure process conducted when various violations occurred in conflict with the foreclosure procedures of the Senate Bill 1137 Chapter 69 (Filed with the Secretary of State and approved by Governor Arnold Schwarzenegger on July 8, 2008 and passed the Assembly on June 30, 2008 and Senate on July 2, 2008. [1]

---

[1] VIOLATIONS OF SB 1137, PERATA, RESIDENTIAL MORTGAGE LOANS; FORECLOSURE PROCEDURES.

EXHIBIT 1
52

(1) Upon a breach of the obligation of a mortgage or transfer of an interest in property, existing law requires the trustee, mortgagee, or beneficiary to record in the office of the county recorder wherein the mortgaged or trust property is situated, a notice of default, and to mail the notice of default to the mortgagor or trustor. Existing law requires the notice to contain specified statements, including, but not limited to, those related to the mortgagor's or trustor's legal rights, as specified. Existing law also requires that the notice of sale in the case of default be posted on the property, as specified. Until January 1, 2013, and as applied to residential mortgage loans made from January 1, 2003, to December 31, 2007, inclusive, that are for owner-occupied residences, this bill would, among other things, require a mortgagee, trustee, beneficiary, or authorized agent to wait 30 days after contact is made with the borrower, or 30 days after satisfying due diligence requirements to contact the borrower, as specified, before filing a notice of default. The bill would require contact with the borrower, as defined, in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. The bill would require the mortgagee, beneficiary, or authorized agent to advise the borrower that he or she has the right to request a subsequent meeting within 14 days, and to provide the borrower the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. The bill would require the notice of default to include a specified declaration from the mortgagee, beneficiary, or authorized agent regarding its contact with the borrower or that the borrower has surrendered the property. If a notice of default had already been filed prior to the enactment of this act, the bill would instead require the mortgagee, trustee, beneficiary, or authorized agent, as part of the notice of sale, to include a specified declaration regarding contact with the borrower. The bill would authorize a borrower to designate a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, options for the borrower to avoid foreclosure. The contact and meeting requirements of these provisions would not apply if a borrower has surrendered the property or the borrower has contracted with an organization, as specified. The bill would also require specified mailings to the resident of a property that is the subject of a notice of sale, as specified. In addition, the bill would make it a crime to tear down the notice of sale posted on a property within 72 hours of posting, thereby imposing a state-mandated local program. Until January 1, 2013, this bill would require a legal owner to maintain vacant residential property purchased at a foreclosure sale, or acquired by that owner through foreclosure under a mortgage or deed of trust. The bill would authorize a governmental entity to impose civil fines and penalties for failure to maintain that property of up to $1,000 per day for a violation. The bill would require a governmental entity that seeks to impose those fines and penalties to give notice of the claimed violation and an opportunity to correct the violation at least 14 days prior to imposing the fines and penalties, and to allow a hearing for contesting those fines and penalties.

SEC. 2. Section 2923.5 is added to the Civil Code, to read:

2923.5. (a) (1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically. (b) A notice of default filed pursuant to Section 2924 shall include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the

**EXHIBIT 1**
53

borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary,

or authorized agent. (c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made.

(g) A notice of default may be filed pursuant to Section 2924 when a mortgagee, beneficiary, or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent. For purposes of this section, "due diligence" shall require and mean all of the following: (1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency. 2(A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

SEC. 4.  Section 2924.8 is added to the Civil Code, to read:

2924.8.  (a) Upon posting a notice of sale pursuant to Section 2924f, a trustee or authorized agent shall also post the following notice, in the manner required for posting the notice of sale on the property to be sold, and a mortgagee, trustee beneficiary, or authorized agent shall mail, at the same time in an envelope

addressed to the "Resident of property subject to foreclosure sale "the following notice in English and the languages described in Section 1632: "Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have."

(b) It shall be an infraction to tear down the notice described in subdivision (a) within 72 hours of posting. Violators shall be subject to a fine of one hundred dollars ($100).

(c) A state government entity shall make available translations of the notice described in subdivision (a) which may be used by a mortgagee, trustee, beneficiary, or authorized agent to satisfy the requirements of this section.

(d) This section shall only apply to loans secured by residential real property, and if the billing address for the mortgage note is different than the property address.

(e) This section shall remain in effect only until January 1,2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

California Civil Code Section 1632

(b) Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to

**EXHIBIT 1**
54

208. Unless enjoined, the Plaintiffs will suffer irreparable harm and will not have an adequate remedy at law.

209.   As a proximate result of the negligent actions of the Defendants, the Plaintiffs have suffered consequential damage and will continue to suffer additional damages in an amount to be fully proved at the time of trial.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### EIGHTEENTH CAUSE OF ACTION

**Slander of Title**

**(Against DEFENDANTS and all other Defendants Claiming Any Interest In the Subject Property or alleging possession of the Power of Sale of the Subject Property)**

---

the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement:

(1) A contract or agreement subject to the provisions of Title 2 (commencing with Section 1801) of, and Chapter 2b (commencing with Section 2981) and Chapter 2d (commencing with Section 2985.7) of Title 14 of, Part 4 of Division 3.

(2) A loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family or household purposes.

(3) A lease, sublease, rental contract or agreement, or other term of tenancy contract or agreement, for a period of longer than one month, covering a dwelling, an apartment, or mobile home, or other dwelling unit normally occupied as a residence.

EXHIBIT 1
55

210.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

211.     The Defendants have caused to be recorded various documents including a Notice of Trustee Sale which has impaired the Plaintiffs' title which constitutes slander of title and the Plaintiffs should be awarded resulting damages to be fully proved at the time of trial.

WHEREFORE, Plaintiffs pray for relief as set forth below:

### NINETEENTH CAUSE OF ACTION

#### Securities Fraud

**(Against DEFENDANTS and all other Defendants Claiming Any Interest In the Subject Property or alleging possession of the Power of Sale of the Subject Property)**

212.     Plaintiffs claims that Defendants have committed securities fraud as JP under rule 144A by privately securitizing their notes in 2001 without disclosing this as required. Plaintiffs claim that Rule 144A is not a securitization rule, but authorization to sell bond at a higher yields. The securities issued under Rule 144A do not have to file a public registration statement with the Securities and Exchange Commission, but can be sold only to qualified financial institutions. Plaintiffs contend fraud when industrial and utility bonds issued under Rule 144A are found to have higher yields than publicly issued bonds after adjusting for risk and because Defendants fail to report yield premiums that are higher, and by failing to file periodic financial statements with the

204.     Securities Exchange Commission, that Defendants have committed fraud using Rule 144A as a safe harbor exemption from the registration requirements of Section 5 of the Securities Act for certain offers and sales of qualifying securities by certain persons other than the issuer of the

EXHIBIT 1
56

securities. The exemption applies to re-sales of securities to qualified institutional buyers, who are commonly referred to as "QIBs. Thus, the Defendants have committed securities fraud by concealing unlawful securitization and failing to disclose that information and having violated the securitization, as set forth, supra.

## TWENTIETH CAUSE OF ACTION

### Trespass on Contract

### (Against  DEFENDANTS and all other Defendants Claiming Any Interest In the Subject Property or alleging possession of the Power of Sale of the Subject Property)

205. Plaintiffs allege trespass on the contract as Plaintiffs' repeatedly attempted to resolve this matter privately by seeking Clarification of the specifics of the Contract. Defendants were Noticed and given ample time in which to respond to this request for Clarification as is the duty of a Party to a Contract. Defendants did not respond to this Notice and by their silence tacitly agreed in whole with the conclusions contained within the Notice.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1.    For Compensatory Damages in an amount to be determined by proof at trial;

2.    For Special Damages in an amount to be determined by proof at trial;

3.    For General Damages in an amount to be determined by proof at trial;

4.    For Punitive Damages as allowed by law;

5.    For Restitution as allowed by law;

6.    For Attorney's Fees and Costs of this action;

EXHIBIT 1
57

7.    For Declaratory Relief, including but not limited to the following Decrees of this Court that:

  a.    Plaintiffs are the prevailing parties;

  b.    The Trustees of the Trusts have no enforceable secured or unsecured claim against the Subject Property;

  c.    The Trustees of the Trusts have no enforceable secured or unsecured claim against the Subject Property;

  d.    The Sponsor has no enforceable secured or unsecured claim against the Subject Property;

  e.    The Depositor has no enforceable secured or unsecured claim against the Subject Property;

  f.    The Mortgage Originator has no enforceable secured or unsecured claim against the Subject Property;

  g.    No other party, whether known or unknown, has an enforceable secured or unsecured claim against the Subject Property;

8.    Any efforts of the Defendants to assign and deliver the Note to the Trustees of the Trusts after the closing date thereof be declared void and a legal nullity, in willful violation of New York Trust Law and of relevant portions of the PSA;

9.    For Injunctive Relief including but not limited to;

  a.    Preliminary and Permanent Injunction enjoining any and all Trustee Sales which may be scheduled by the Defendants herein;

EXHIBIT 1
58

1      b.      An Order prohibiting Defendants, and each of them, from filing an unlawful

2   detainer action or any other action against Plaintiffs;

3      10.     For Cancellation of the Deed of Trust herein;

4

5      11.     For any prejudgment or other interest according to law; and

6      12.     Any other and further relief that the Court considers just and proper.

7

8   March 29, 2011

9                                              _____
                                               BRICK PINCKNEY, Plaintiff In Pro-Per
10

11

12                                             _____
13  March 20, 2011                             JEANNE PINCKNEY, Plaintiff In Pro-Per

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1
59

Exhibit 1

**EXHIBIT 1**
**60**

Exhibit "1"   1-19 pgs

**Brick & Jeanne Pinckney**
**30982 Steeplechase Dr**
**San Juan Capistrano, CA 92675**

Washington Mutual Bank
2210 Enterprise Dr
Florence, SC 29501

JP Morgan Chase Bank, N.A.
7301 Baymedows Way
Jacksonville, FL 32256

California Reconveyance Company
9200 Oakdale Ave
Mail Stop CA2-4379
Chatsworth, CA 91311

Certified Mail #: XXXX XXXX XXXX XXXX XXXX

March 2, 2011

# RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, and The Gramm Leach Bliley Act.**

REF: Alleged Account # 1596872860

Dear Madam or Sir:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent, and the conversations with your service representatives, have been unproductive and have not answered many questions. It is my understanding that your company may have been accused of engaging in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such practices by anyone, let alone this mortgage company or anyone who has any interest this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minority Americans.

EXHIBIT 1
61

deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to. I hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account number 1596872860. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one. I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the requests.**

I also request that you kindly conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate this debt so that it is accurate to the penny!

Please do not rely on previous servicers or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.
I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally:
Increased the amounts of monthly payments.
Increased the principal balance I owe;
Increased escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward principal on this account; and/or
Assessed, charged and/or collected fees, expenses and misc. charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing or lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 1596872860 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code as well as a request under Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty [60] days of its receipt!

In order to conduct the examination and audit of this loan, I need to have full and immediate

EXHIBIT 1
62

disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by my self and others to insure that this loan:

Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Act, HOEPA and other laws;

That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

That the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me;

That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust;

That each servicers and sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

That interest and principal have been properly calculated and applied to this loan;

That any principal balance has been properly calculated, amortized and accounted for;
that no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account;

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies of:

1)      Any certificated or uncertificated security, front and back, used for the funding of account # 1596872860.

2)      Any and all "Pool Agreement(s)" including account # 1596872860 between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any government sponsored entity, hereinafter (GSE).

EXHIBIT 1
63

3)      Any and all "Deposit Agreement(s)" regarding account # 1596872860 or the "Pool Agreement" including account # 1596872860 between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

4)      Any and all "Servicing Agreement(s)" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

5)      Any and all "Custodial Agreement(s)" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

6)      Any and all "Master Purchasing Agreement" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

7)      Any and all "Issuer Agreement(s)" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

8)      Any and all "Commitment to Guarantee" agreement(s) between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

9)      Any and all "Release of Document agreements" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

10)     Any and all "Master Agreement for servicer's Principle and Interest Custodial Account" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

11)     Any and all "Servicers Escrow Custodial Account" between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

12)     Any and all "Release of Interest" agreements between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and any GSE.

13)     Any Trustee agreement(s) between WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. and WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s trustee regarding account # 1596872860 or pool accounts with any GSE.

14)     Please send to the requester a copy of any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter.

15)     Please send to the requester a copy of any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note.

16)     Please send to the requester a copy of any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s).

17)     Please send to the requester a copy of any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note.

EXHIBIT 1
64

18)     Please send to the requester a copy of any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note.

19)     Please send to the requester a copy of any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note.

20)     Please send to the requester any documentation evidencing the Mortgage or Deed of trust is **not** a constructive trust or any other form of trust.

21)     All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

22)     All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review this mortgage account may properly conduct their work.

23)     All assignments, transfers, allonge, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

24)     All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

25)     All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

26)     The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

27)     All escrow analyses conducted on this account from the inception of this account until the date of this letter;

28)     The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statement(s) including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

29)     Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

30)     All letters, statements and documents sent to me by your company;

31)     All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

EXHIBIT 1
65

32)     All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

33)     All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

34)     All electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

35)     All copies of property inspection reports, appraisals, BPOs and reports done on the property.

36)     All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

37)     All checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

38)     All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

39)     All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until present date?

40)     All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the from the inception of this account until present date?

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

1)     Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that this experts can decipher the data provided.

2)     For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

3)     For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this

EXHIBIT 1
66

account.

## DEBITS & CREDITS

1)      In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to this account as well as the date any credit was received.

2)      In a spreadsheet form or in letterform in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

3)      For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

4)      For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

1)      Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2)      If not, why?

3)      Is your company the servicers of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4)      Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5)      If yes, please detail for me the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

1)      For purposes of my questions below dealing with attorney fees, please consider the terms attorney fees and legal fees to be one in the same.

2)      Have attorney fees ever been assessed to this account from the inception of this account to the present date?

3)      If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessment to this account?

EXHIBIT 1
67

4)    Have attorney fees ever been charged to this account from the inception of this account to the present date?

5)    If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account?

6)    Have attorney fees ever been collected from this account from the inception of this account to the present date?

7)    If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account?

8)    Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date?

9)    Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment, charge or collection of attorney fees?

10)    Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

11)    Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

12)    Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

13)    Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

14)    Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

15)    Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16)    How much in total attorney fees have been assessed to this account from the inception of this account until present date? $_____

17)    How much in total attorney fees have been collected on this account from the inception of this account until present date? $_____

18)    How much in total attorney fees have been charged to this account from the inception of this account until present date? $_____

EXHIBIT 1
68

19)    Please send to me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that been assessed or collected from this account.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1)    Has there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

2)    If yes, please explain the reason for each and every suspense transaction that occurred on this account? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3)    In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account until present date?

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1)    Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2)    Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3)    Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4)    Are late fees considered interest? Yes or No?

5)    Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6)    Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7)    If yes, please describe what expenses or charges were charged or assessed to this account?

8)    Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late?

9)    Please describe for me in writing what damages you or others undertook due to any payment I made, which was late?

EXHIBIT 1
69

10)    Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from   the inception of this account to present date.

12)    Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to present date.

13)    Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

14)    Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15)    Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

16)    Have any late charges been assessed to this account? Yes or No?

17)    If yes, how much in total late charges have been assessed to this account from the inception of this account until present date? $_____

18)    Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19)    Have late charges been collected on this account from the inception of this account until present date? Yes or No?

20)    If yes, how much in total late charges have been collected on this account from the inception of this account until present date? $_____

**PROPERTY INSPECTIONS**
1)    For purposes of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

2)    Have any property inspections been conducted on my property from the inception of this account until the present date?

3)    If your answer is no, you can skip the rest of these questions in this section concerning property inspections?

4)    If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed or note?

EXHIBIT 1
70

5)      Please tell me the price charged for each property inspection?

6)      Please tell me the date of each property inspection?

7)      Please tell me the name and address of each company and person who conducted each property inspection on my property?

8)      Please tell me why property inspections were conducted on my property?

9)      Please tell me how property inspections are beneficial to me.

10)     Please tell me how property inspections are protective of my property.

11)     Please explain to me your policy on property inspections.

12)     Do you consider the payment of inspection fees as a cost of  collection? Yes or No?

13)     If yes, why?

14)     Do you use property inspections to collect debts? Yes or No?

15)     Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

16)     If yes, please answer when and why?

17)     Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees?

18)     Have you labeled in any record or document sent to me a property inspection as a misc. advance? Yes or No?

19) If yes, why?

20)     Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

21)     If yes, why?

22)     Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

23)     Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

24)     Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

25)    Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

26)    Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

27)    If yes, when and how much was charged?

28)    Is interest allowed to be assessed or charged on inspection fees charged or assessed to this account? Yes or No?

29)    How much in total inspection fees have been assessed to this account from the inception of this account until present date? $_____

30)    How much in total inspection fees have been collected on this account from the inception of this account until present date? $_____

31)    Please forward to me copies of all property inspections made on my property in this mortgage account file.

32)    Has any fee charged or assessed for property inspections been placed into escrow account? Yes or no?

**BPO FEES**
1)    Have any BPOs [Broker Price Opinions] been conducted on my property?

2)    If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed or note?

3)    Please tell me the price of each BPO?

4)    Please tell me who conducted each BPO?

5)    Please tell me why BPOs were conducted on my property

6)    Please tell me how BPOs are beneficial to me.

7)    Please tell me how BPOs are protective of my property.

8)    Please explain to me your policy on BPOs.

9)    Have any BPO fees been assessed to this account? Yes or No?

10)    If yes, how much in total BPO fees have been assessed to this account? $_____

11)    Have any BPO fees been charged to this account? Yes or No?

12)    If yes, how much in total BPO fees have been charged to this account? $_____

13)   Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

14) Please send to me copies of all BPO reports that have been done on my property.

15) Has any fee charged or assessed for A BPO been placed into escrow? Yes or no?

## FORCED-PLACED INSURANCE

1)   Have you placed or ordered any forced-placed insurance polices on my property?

2)   If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed or note?

3)   Please tell me the price of each policy?

4)   Please tell me the agent for each policy?

5)   Please tell me why each policy was placed on my property.

6)   Please tell me how the policies are beneficial to me.

7)   Please tell me how policies are protective of my property.

8)   Please explain to me your policy on forced-placed insurance.

9)   Have any forced-placed insurance fees been assessed to this mortgage or escrow account? Yes or No?

10)   If yes, how much in total forced-placed policy fees have been assessed to this account? $_____

11)   Have any forced-placed insurance fees been charged to this mortgage or escrow account? Yes or No?

12)   If yes, how much in total forced-placed insurance fees have been charged to this mortgage or escrow account? $_____

13)   Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect forced-placed insurance fees from me.

14)   Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15)   Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.

EXHIBIT 1
73

16)     Has the agency or carrier you used to place a forced-placed insurance policy on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17)     Do you maintain a blanket insurance policy to protect your properties when customer policies have expired?

18)     Please send to me copies of all forced-placed insurance policies that have been ordered on my property.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

1)     Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2)     Did the originator of this account or previous servicers of this account have a warehouse account agreement or contract with your company?

3)     Did the originator of this account or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4)     Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected?

5)     Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6)     Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7)     Since the inception of this loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify *the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?*

8)     Since the inception of this loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?

9)     Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party? If the answer is yes, would you kindly identify the

EXHIBIT 1
74

names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

10)   Since the inception of this loan, has any sub-servicers serviced any portion of this mortgage loan? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage loan.

11)   Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12)   Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13)   Has there been any electronic assignment of this mortgage with MERS [Mortgage Electronic Registration System] or any other computer mortgage registry service or computer program? If yes, please identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that has been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14)   Have there been any investors [as defined in your industry] who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date? If yes, please identify the name and address of each and every individual, entity, organization and/or trust.

15)   Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

16)   Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

17)   How much was paid for this individual mortgage account by you?

18)   If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan.

19)   If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

20)   Who did you issue a check or payment to for this mortgage loan?

21)   Please provide me copies with the front and back of canceled check.

22)   Did any investor approve the foreclosure of my property?

23)   Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

**EXHIBIT 1**

24)   Please identify all persons who approved the foreclosure of my property!

Please provide me with the documents I have requested and a detailed answer to each of my questions within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional QWR letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA REQUEST in accordance with law and the questions, documents and validation of debt to the penny and correct any abuse(s) or scheme(s) uncovered and documented.

**Default Provision(s) under this QUALIFIED WRITTEN RESPA REQUEST**
WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s or any agents,
        transfers, or assigns omissions of or agreement
by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this
RESPA REQUEST", agrees and consents to including but not limited by any violations of law
and/or immediate terminate/remove any and all right, title and interests (liens) in Brick & Jeanne
Pinckney or any property or collateral connected to John Henry Doe or account # 1596872860
and waives any and all immunities or defenses in claims and or violations agreed to in this
RESPA REQUEST including but not limited by any and all:

1. Brick & Jeanne Pinckney's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding of any and all power of attorney or appointment WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. may have or may have had in connection with account # 1596872860 and any property and/or real estate connected with account # 1596872860.

2. Brick & Jeanne Pinckney's right to have any certificated or uncertificated security re-registered in Brick & Jeanne Pinckney's, and only Brick & Jeanne Pinckney's name.

3. Brick & Jeanne Pinckney's right of collection via WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s liability insurance and/or bond.

4. Brick & Jeanne Pinckney's entitlement in filing and executing any instruments, as power of attorney for and by WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A., including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where the WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. is located.

5. Brick & Jeanne Pinckney's right to damages because of WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s wrongful registration, breach of intermediary responsibility with regard to Brick & Jeanne Pinckney's asset by WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. issuing to

EXHIBIT 1
76

Brick & Jeanne Pinckney a certified check for the original value of Brick & Jeanne Pinckney's monetary instrument.

6. Brick & Jeanne Pinckney's right to have account # 1596872860 completely set off because of WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s wrongful registration, breach of intermediary responsibility with regard to Brick & Jeanne Pinckney's monetary instrument/asset by WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. sending confirmation of set off of wrongful liability of Brick & Jeanne Pinckney and issuing a certified check for the difference between the original value of Brick & Jeanne Pinckney's monetary instrument/asset and what Brick & Jeanne Pinckney mistakenly sent to WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. as payment for such wrongful liability.

WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as an appointed agent for WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. in accordance with WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corporation/National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

**Power of Attorney:** When WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. fails by not rebutting to any part of this "RESPA REQUEST" WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. agrees with the granting unto Brick & Jeanne Pinckney's unlimited **Power of Attorney** and any and all full authorization in signing or endorsing WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A.'s name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. waives any and all claims of Brick & Jeanne Pinckney, and/or defenses and remains in effect until satisfaction of all obligation(s) by WASHINGTON MUTUAL BANK, FA/JP MORGANCHASE BANK, N.A. has been satisfied.

Sincerely,

_____
Brick & Jeanne Pinckney

CC:

Sincerely,

Jeanne Pirtchey

CC:

1. Federal Trade Commission
600 Pennsylvania Avenue NW,
Washington, DC. 20580

3. Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street, SW

2. Office of Housing Enterprise Oversight (OFHEO )
1700 G Street, N.W., Fourth Floor,
Washington, DC 20552.

RESPA REQUEST            Page 17 of 17

EXHIBIT 1
78

1. Federal Trade Commission
3300 N. Central Avenue,
600 Pennsylvania Avenue NW,
Washington, DC. 20580

2. Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC

3. Office of Housing Enterprise Oversight (OFHEO )
1700 G Street, NW., Fourth Floor,
Washington, DC 20552.

EXHIBIT 1
79

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Washington Mutual
2210 Enterprise Dr
Florence, SC
       29501

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Ted Butler_  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

MAR 7 2011

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7009 2820 0001 5113 1738

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

J.P. Morgan Chase
7301 Baymedows Way
Jacksonville FL.
       32256

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _A. Mull_  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
_Mullins_                         MAR 8 2011

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7009 2820 0001 5113 1745

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

EXHIBIT 1
80

Exhibit 2

**EXHIBIT 1**
**81**

Mar 24 11 11:33a      Jeanne Pinckney      *EXHIBIT 2*      9492488871                p.1

*Oct 13 2010*

Kyle

This is a short outline of the fiasco with Chase Bank.

The issues started in November of 2009. I had not paid the property tax on our home the amount is approximately 16,500 for a year. One November 14 2009 after a lot of back and forth conversation with

Chase, I went to a local branch and paid amount that Chase tax department said was due it was in excess of $24,000 I also paid additional $4200. This was to bring the escrow account current and to eliminate the impound account.

I started working with a gentleman by the name of Steve he has been more helpful than anyone at Chase.

December I received a new statement for a $12,000 house payment again. I went to the local branch again Steve and me call the customer service department they said at that time it would be taken care of. The next statement was correct and paid in a timely manner.

This mess has been going on for 10 months. I have tried repeatly to get this corrected. There is no one in the Chase Customer Care, Tax Department or Mortgage Depart that can make any correction on this property tax issue. They have re=applied funds at their will and change the amount due monthly. I fell I have done everything possible to correct this issue. It has affected my health and taken no less than 3-4 hours sitting at the local branch to no avail

I have all documentation; cancel checks and statement to back this up. I am really done at this point

Thanks

*Jeanne Pinckney*

**EXHIBIT 1**
82

*Oct 13 2010*

Kyle

This is a short outline of the fiasco with Chase Bank.

The issues started in November of 2009. I had not paid the property tax on our home the amount is approximately 16,500 for a year. One November 14 2009 after a lot of back and forth conversation with

Chase, I went to a local branch and paid amount that Chase tax department said was due it was in excess of $24,000 I also paid additional $4200. This was to bring the escrow account current and to eliminate the impound account.

I started working with a gentleman by the name of Steve he has been more helpful than anyone at Chase.

December I received a new statement for a $12,000 house payment again. I went to the local branch again Steve and me call the customer service department they said at that time it would be taken care of. The next statement was correct and paid in a timely manner.

This mess has been going on for 10 months. I have tried repeatly to get this corrected. There is no one in the Chase Customer Care, Tax Department or Mortgage Depart that can make any correction on this property tax issue. They have re=applied funds at their will and change the amount due monthly. I fell I have done everything possible to correct this issue. It has affected my health and taken no less than 3-4 hours sitting at the local branch to no avail

I have all documentation; cancel checks and statement to back this up. I am really done at this point

Thanks

*Jeanno Pinckney*

**EXHIBIT 1**
83

# LAW OFFICES OF KYLE KUBISCH

TELEPHONE: (949) 225-4475

18101 VON KARMAN, SUITE 330
IRVINE, CA 92612
kkubisch@kubischlaw.com

FACSIMILE: (949) 225-4476

October 28, 2010

*Via Certified U.S. Mail and Facsimile*

Chase Home Finance
P.O. Box 24696
Columbus, OH 43224-4696

Chase Home Finance
PO Box 183166
Columbus, OH 43218-3166

Re:    *Chase Loan No. 1596872860*

To Chase Home Finance Department:

This office represents Bertine Pinckney and Jeanne Pinckney. We write in furtherance of our clients' efforts to resolve the outstanding issues related to their loan (loan number 1596872860) in regard to the property located at 30982 Steeplechase Drive, San Juan Capistrano, CA 92675.

As we suspect can be gathered by review of the loan file, considerable uncertainty exists in regard to the administration of my clients' payments and the related escrow impound account. Simply put, despite my clients' best efforts, Chase has been of no assistance in rectifying what we believe are serious errors on its part and has flippantly advised my clients that "no one" at Chase can be of further assistance. Obviously, such comments belie the customer service Chase proclaims it strives to provide and serves only to inflame what should be a simple matter of clarifying that payments are accurate and properly credited.

The issues began sometime in late 2009 when the Pinckneys were advised by Chase that additional monies were needed to pay that years' property tax. On or about November 14, 2009, Ms. Pinckney went to a local Chase branch and, after considerable consultation with its Tax Department, agreed to pay the amount claimed due by Chase with an understanding that the impound account would be closed. Pursuant to Chase's demand, Ms. Pinckney paid the amount Chase claimed was due (a sum in excess of $28,000). At that time, Ms. Pinckney was advised that the impound account would be closed and that her monthly payments would reflect the monthly mortgage payment due (approximately $5,738.13).

**EXHIBIT 1**
84

Chase Home Finance
*Chase Loan No. 1596872860*
October 28, 2010
Page 2

For reasons that remain unexplained, not long after the Pinckneys paid the specific amount requested by Chase to bring the account to balance and to close the impound account, Chase sent three additional invoices in the amount of $12,575.28 invoices in November 2009, December 2009 and January 2010. It is unclear how this figure was computed, although we suspect that apparently called for yet another property tax payment, despite the parties' agreement that the account would be closed. After receiving no further assistance from Chase, Ms. Pinckney went again to the local branch again and met with one of its managers, Steven Vannosterand. Together, Ms. Pinckney and Mr. Vannosterand were apparently able to convince the Chase customer service department that the invoice were incorrect.

Unfortunately, since that time, the Pinckneys have continued to receive incorrect invoices, harassing phone calls and baseless demands for payment that violate the prior agreement by the parties and seem to reflect a complete inability on the part of Chase to manage the subject account. Most notably, the Pinckneys have continued to receive invoices in amounts of approximately $8,600 over the course of the past year, despite the fact that their mortgage payment is only $5,738.13 a month and the prior agreement that the impound account would be closed.

As reflected by the activity on this account, Ms. Pinckney has engaged in countless efforts to resolve Chase's inability to openly service the subject loan. These efforts have apparently been in vain and she has been advised that Chase simply lacks the ability and/or will to perform as agreed. In fact, both Mr. Vannosterand and Ms. Pinckney spent hours speaking to various persons in Chase's Customer Care, Tax and Mortgage Departments before being advised that no one could assist them because necessary account information could not be accessed. Mr. Vannosterand, who has long has assisted my clients in their efforts to resolve this matter, has expressed his considerable frustration with Chase's inability to effectively manage the subject account.

As such, please consider this as my clients' continued request that Chase provide a full accounting of the subject loan, including, but not limited to, all of the following:

1.     Principal loan amount

2.     Applicable interest rates

3.     Payments made by the Pinckneys

4.     Any fees charged by Chase or its predecessors in interests

5.     Itemization of how each payment by the Pinckneys has been applied (e.g., whether to interest, principal, fees, property tax, etc.)

6.     Confirmation that the impound account has been closed and that no further property tax charges are being assessed

**EXHIBIT 1**
85

Chase Home Finance
*Chase Loan No. 1596872860*
October 28, 2010
Page 3

       7.    A clear and concise breakdown of how all invoices for the calendar year 2010 have been calculated

       8.    A clear and concise statement of any amounts due to bring the subject loan to balance, with an itemization as to how such amount has been calculated.

       9.    A waiver of any and all late fees and related charges incurred on the account

    As I believe is clearly reflected in the my clients' payment history, they have done their upmost to keep the account in good standing and have, until very recently, paid what Chase has demanded notwithstanding their objection to said amounts and Chase's unwillingness and/or inability to correctly administer the loan or justify what appear to be inflated invoices. Unfortunately, my clients' good faith efforts have not prompted Chase to rectify its practices and, we suspect, has had the opposite effect. Consequently, please be advised that my clients will await receipt of the above information, at which time they will pay exactly what is owed pursuant to the subject loan documents and the November 2009 agreement. I trust Chase is interested in resolving these issues.

    We again ask that your client provide the information requested so that we may resolve the instant dispute without court intervention. I look forward to hearing from you.

               Very truly yours,

               LAW OFFICES OF KYLE KUBISCH

    By:

               Kyle Kubisch

**EXHIBIT 1**
86

*EXHIBIT 2*

12-09-2010

I am faxing this information for a 3rd party release. Any and all information may be released to our attorney.

Loan # 1596872860

Name: Bertine and Jeanne Pinckney
Address: 30982 Steeplechase Dr.
         San Juan Capistrano, Ca. 92675

Bertine Pinckney

Jeanne Pinckney

All information to be released to :

Kyle Kubisch
18101 Von Karmen  Suite 330
Irvine,Ca. 92612

Phone:  949-225-4475

EXHIBIT 1
87

...ase Home Finance LLC (OH4-7302)
3415 Vision Drive
Columbus, OH 43219-6009
(800) 848-9136 Customer Car.
(800) 582-0542 TDD / Text Telephone



November 11, 2010


.., le Kubisch




Re: Loan Number ***** **2800

**Authorization Required for Account Information**

Dear Kyle Kubisch:

I am writing in response to the recent request that Chase received for information about one of our customer's accounts.

We are unable to process your request.  Chase is committed to protecting customer account information.  We require signed, written authorization from the customer before we can release any information by telephone or in writing to a third party.

If you have any questions, please contact Customer Care at (800) 848-9136.

Sincerely,

Teresa Lizama
Research Specialist
Customer Request Management



**EXHIBIT 1**
**88**

# LAW OFFICES OF KYLE KUBISCH

TELEPHONE: (949) 225-4475

18101 VON KARMAN, SUITE 330
IRVINE, CA 92612
kkubisch@kubischlaw.com

FACSIMILE: (949) 225-4476

December 27, 2010

### *Via U.S. Mail and Facsimile*

Chase Home Finance
P.O. Box 24696
Columbus, OH 43224-4696

Chase Home Finance
PO Box 183166
Columbus, OH 43218-3166

Chase Home Finance, LLC
c/o Teresa Lizama
Customer Request Department
3415 Visions Drive
Columbus, OH 43219-6009

Re:     *Chase Loan No. 1596872860*

Dear Ms. Lizama:

Pursuant to your November 11, 2010, a copy of which is enclosed, please find a written authorization executed by my clients.[1] I am also enclosing a copy of my October 28, 2010 letter that was sent to Chase. As reflected in my prior letter, please consider this as my clients' continued request that Chase provide a full accounting of the subject loan, including, but not limited to, all of the following:

1.      Principal loan amount
2.      Applicable interest rates
3.      Payments made by the Pinckneys
4.      Any fees charged by Chase or its predecessors in interests
5.      Itemization of how each payment by the Pinckneys has been applied (e.g., whether to interest, principal, fees, property tax, etc.)

---

[1] It is my understanding that the Pinckeys sent a copy of the authorization to Chase on December 9, 2010.

**EXHIBIT 1**
89

Chase Home Finance
*Chase Loan No. 1596872860*
December 27, 2010
Page 2

6.   Confirmation that the impound account has been closed and that no further
     property tax charges are being assessed
7.   A clear and concise breakdown of how all invoices for the calendar year 2010
     have been calculated
8.   A clear and concise statement of any amounts due to bring the subject loan to
     balance, with an itemization as to how such amount has been calculated.
9.   A waiver of any and all late fees and related charges incurred on the account

As I believe is clearly reflected in the my clients' payment history, they have done their
upmost to keep the account in good standing and have, until very recently, paid what Chase has
demanded notwithstanding their objection to said amounts and Chase's unwillingness and/or
inability to correctly administer the loan or justify what appear to be inflated invoices.
Unfortunately, my clients' good faith efforts have not prompted Chase to rectify its practices and,
we suspect, has had the opposite effect.  Consequently, please be advised that my clients will
await receipt of the above information, at which time they will pay exactly what is owed
pursuant to the subject loan documents and the November 2009 agreement.  I trust Chase is
interested in resolving these issues.

We again ask that your client provide the information requested so that we may resolve
the instant dispute without court intervention.  I look forward to hearing from you.

Very truly yours,

LAW OFFICES OF KYLE KUBISCH

By:

Kyle Kubisch

Enclosures

EXHIBIT 1
90

# EXHIBIT "2"

Date: 4/24/2011.

On Jan 5, 2011. I open dialog with Chase once again, I was told at that time that they would get me to one person who could resolve these issues.

The first Chase representative was Elsa Becerra (818-775-3694) she was involved in high balance accounts dept.

Then with in a couple of days I was referred to Chase Representative David I.D # 420303 no contact information. David told me that within 5-10 days the matter would be resolved, which it did not happen.

Then came Chase representative Cindy (818-775-3635) and still no help from Cindy.

Then on Jan 13, 2011. I was contacted by Rita Quedada (818-775-3641) she said she could and would be my personal contact. Rita was going to run accounting and get back to me. Which she did and it turns out that Chase had applied all of my impound funds where they chose to and are unable to account for most if not all of my money. Not one penny was applied to my impound account in which 100% of it should have been applied as directed.

I have been speaking to Rita on an ongoing basis for about 2 months in which our last conversation on Wend 4, 2011 in which she told me she was going to her superior and having a full audit done and since then I have never heard back from her or anyone at Chase. I have continued to call Rita as recently of 4/22/2011 and unfortunately Rita is not answering or returning any of my calls at this time.

Thanks

Jeanne Pickney.

EXHIBIT 1
91

 **CT Corporation**

**Service of Process Transmittal**
04/06/2011
CT Log Number 518310035

**TO:** Stacey Elliott
JPMorgan Chase Bank, N.A.
9200 Oakdale Ave, 1st Floor, Mail Code CA2-4338
Chatsworth, CA 91311

**RE:** **Process Served in California**

**FOR:** California Reconveyance Company (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Brick Pinckney, etc. and Jeanne Pinckney, etc., Pltfs. vs. JP Morgan Chase Bank, N.A., etc., et al. including California Reconveyance Co, etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Ex Parte Petition, Stipulation Form and Proposed Order |
| **COURT/AGENCY:** | Orange County, Superior Court, CA Case # 30201100462486 |
| **NATURE OF ACTION:** | Quiet Title - Ex Parte Application for injunctive relief and temporary restraining order enjoining Defendants from attempting to sell the property at 30982 Steeplechase Dr, San Juan Capistrano, CA 92675 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/06/2011 at 08:35 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | 4/6/11 at 3:00 p.m. |
| **ATTORNEY(S) / SENDER(S):** | Brick and Jeanne Pinckney 30982 Steeplechase Dr San Juan Capistrano, CA 92675 949 388 5801 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/06/2011, Expected Purge Date: 05/06/2011 Telephone, Stacey Elliott , 818-775-8523 Image SOP |
| **SIGNED:** **PER:** **ADDRESS:** | C T Corporation System Nancy Flores 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT 2**

**72**

 CT Corporation

**Service of Process Transmittal**
04/06/2011
CT Log Number 518310035

**TO:**   Stacey Elliott
JPMorgan Chase Bank, N.A.
9200 Oakdale Ave, 1st Floor, Mail Code CA2-4338
Chatsworth, CA 91311

**RE:**   **Process Served in California**

**FOR:**  California Reconveyance Company (Domestic State: CA)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Summons, Attachment(s), Cover Sheet, Complaint, Exhibit | By Process Server on 04/01/2011 at 12:00 | Stacey Elliott JPMorgan Chase Bank, N.A. | 518290339 |

Page 2 of  2 / JC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT 2**

73

1   BRICK PINCKNEY, In Pro-Per
    JEANNE PINCKNEY, In Pro-Per
2   30982 Steeplechase DR
    San Juan Capistrano, CA 92675
3   Tel: (949) 388-5801
4   Fax: (949) 248-8871
    jbpinckney@yahoo.com
5
6
7
8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **FOR THE COUNTY OF ORANGE**             30-2011

10                                                        0 0 4 6 2 4 8 6

11  BRICK PINCKNEY, an individual, and JEANNE     | Case No.:
    PINCKNEY, an individual;
12                                                | EX PARTE PETITION FOR INJUNCTIVE
                    Plaintiffs,                   | RELIEF AND TEMPORARY RESTRAINING
13         v.                                     | ORDER AGAINST ALL DEFENDANTS
                                                  | HEREIN.
14  JP MORGAN CHASE BANK, N.A., a Business
15  Entity, form unknown; FIRST AMERICAN
    TITLE COMPANY, a Business Entity, form
16  unknown; MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC., a Business        | JUDGE JAMES J. DI CESARE
17  Entity, form unknown; PINNACLE                |        DEPT. C18
18  FINANCIAL, a Business Entity, form unknown;
    JP MORGAN MORTGAGE ACCEPTANCE
19  CORP, a Business Entity, form unknown; JP     | DATE: APRIL 6, 2011
20  MORGAN MORTGAGE ACQUISITION
    TRUST 2007-CH1; DEUTSCHE BANK                 | TIME: 3:00 P.M.
21  NATIONAL TRUST COMPANY, a Business            | DEPT: C18
22  Entity, form unknown; CALIFORNIA
    RECONVEYANCE CO, a Business Entity, form
23  unknown; and DOES 1-100 inclusive:
24                  Defendants.
25
26
27
28              *Pinckney. v. JP Moran Chase, et.al.*
                              1

EXHIBIT 2
74

TO ALL PARTIES AND THEIR COUNSELS OF RECORD:

 PLEASE TAKE NOTICE THAT on _APRiL, 06, 2011 at 300 A.m._ or as soon

thereafter as the matter may be heard in Department _C 18_ of the above-entitled court located in the

Superior Court of California, Orange County, _Central Justice Center_____, BRICK

PINCKNEY and JEANNE PINCKNEY, (hereafter collectively referred to as "Plaintiffs") will move

this Court on an Ex-Parte basis for a Temporary Restraining Order ("TRO"), restraining and

enjoining Trustee and all parties, their agents, assigns, partners, employees, and any individual or

entity acting in concert from engaging in any of the following acts pending a hearing on a Preliminary

Injunction.  All allegations and breaches of the law are contained within a Complaint currently

pending in the Orange County Superior Court, Case No._30-2011-00462486_

 1.  To enjoin Defendants and all parties from selling or attempting to sell, or causing to be sold,

the trust property commonly known as 30982 Steeplehcase Dr, San Juan Capistrano, CA 92675

(hereinafter referred to as "Subject Property").

 2.  Plaintiff and Defendants each claim a right to the Subject Property described above.

 3.  Specifically, one of the key consumer protections under RESPA is the ability of a borrower

to send a Qualified Written Request ("QWR") to its loan servicer asking for an accounting of all

money owing, late fees charged, etc. When the borrower sends a QWR to its lender, the lender has

20 days to acknowledge receipt of the QWR and 60 days to provide a substantive response. On

March 2, 2011, Plaintiff sent a QWR to Defendants JP Morgan Chase Bank, N.A. and  California

Reconveyance Company, who at the time had been appointed by JP Morgan Chase Bank, N.A.  as the

*Pinckney. v. JP Moran Chase, et.al..*

2

EXHIBIT 2

75

sub-servicer and trustee for the alleged subject loan. Rather than respond to Plaintiff's QWR, California Reconveyance Company response to the QWR was inadequate. In addition, California Reconveyance Company failed to provide Plaintiff with several of the documents requested. Notably, Plaintiff requested documentation reflecting the identity of the true owner and holder of the Note and mortgage as set forth below. JP Morgan Chase Bank, N.A. failed to provide information.

4.   Numerous, complicated issues must be litigated prior to a legal determination of rights. Currently Defendants are attempting to procure the above-referenced property and dispose of it for profit. It is Plaintiffs bonafide contention that this is illegal and should be forbidden by operation of law.

5.   This application for preliminary injunctive relief as set forth herein, is made upon the grounds that the conduct sought to be enjoined, if allowed to occur or continue to occur, will cause immediate and irreparable injury to Plaintiffs in that if the sale is not enjoined Plaintiffs will lose their residence and no harm will come to the beneficiary because it does not own the Note and there is a defect in the foreclosure process, including but not limited to the trustee's failure to comply with *California Civil Code* § 2934 *et seq.*

6.   The Notice of Default is void and invalid pursuant to Defendant's failure to comply with *California Civil Code* §§ 2923.5 and 2924, and other related law, because, amongst other things, Defendants have no interest in the Subject Real Property, fraud committed by Defendants, failure to contact the borrower (Plaintiff) to assess Plaintiff's financial situation prior to filing and recording a Notice of Default.

EXHIBIT 2

76

7.  Also, the Note and Deed of Trust has been separated due to the improper securitization of the loan for the Subject Real Property.

8.  This application will be based upon *Code Civ. Proc.* §§ 525 and 527 *et seq.* and *Cal. Rules of Court*, Rule 3.1150 and *Cal. Rules of Court*, Rules 3.1200 *et seq.*; the exhibits, records and files in this action; and upon such further evidence and argument as may be presented prior to or at the time of hearing on the motion.

WHEREFORE, Plaintiff prays for an Order against the Defendants as follows:

1.  Temporarily restrain Defendants from possession or sale of the Subject Property, and is the subject of pending litigation, until such a decision of ownership can be made in the pending matter.

2.  Any other and further relief that the Court considers just and proper.

Respectfully Submitted,

*Pinckney. v. JP Moran Chase, et.al..*

4

EXHIBIT 2
77

1  above-entitled court upon a Complaint of the above-named Plaintiffs against the above-named

2  Defendants.  The complaint alleges a real property claim affecting real property located at 30982

3  *Steeplechase DR,*
Steeple Case, San Juan Capistrano, CA 92675, County of Orange, State of California.

4

5

6  April 5
March 2011

7                                                        BRICK PINCKNEY, Plaintiff In Pro-Per

8

9

10  April 5
March 2011

                                                        JEANNE PINCKNEY, Plaintiff In Pro-Per

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pinckney. v. JP Moran Chase, et.al..*

2

EXHIBIT 2
78

## 90 DAY STAY:  STIPULATION AND ORDER

(Revised March 2011)

CaseName: _____

CaseNo:_____

This case involves a CC § 2923.5 / *Mabry* claim and Plaintiff is seeking a temporary restraining order ("TRO") and a Preliminary Injunction hearing on said grounds.  This Court recognizes that CC § 2923.5 and *Mabry* create an ungainly, inefficient, expensive process; the process involves a TRO hearing, a preliminary injunction hearing, law and motion hearings and potentially expedited discovery with an expedited trial date of this bifurcated issue.  Also, that the legislative intent is for a non-judicial, not litigated foreclosure process.  Plaintiff alleges that if a loan modification is obtained then the Complaint in this action will be dismissed, avoiding unnecessary law and motion, discovery, and costs of preparation for trial.

Pursuant to CCP § 128 and 187, in order to more efficiently handle a large and fast-growing caseload of non-judicial foreclosure cases and to preserve the equities and due process, this Court hereby declines to rule on the TRO and declines to set a hearing for the preliminary injunction at this time, and instead approves this Stipulation and Order seeking an early settlement conference process and an early resolution of the entire action:

1. All foreclosure related activities are stayed per the terms of this order.

2. This order is conditioned on Plaintiff taking the following actions:  (1) paying an amount equal to the last scheduled monthly mortgage payment amount on or before the _____ day of each month, beginning on _____, or any amount the parties agree is not in dispute as to the monthly mortgage payment. 2) keeping current on the payment of property taxes, (3) maintaining insurance on the property, and (4) serving all Defendants with the Summons, Complaint, this Order, the TRO application, and any other papers within five days of the entry of this Order in the same manner as the CCP provides for service of the summons and complaint, and filing proofs of service demonstrating same within 20 days of the date of entry of this Order.  Failure to comply with the service requirements may result in the striking of this Order and cancellation of the Loan Modification Settlement Conference process.  The monthly payment shall be $_____ per month.  If any payment is five days late, or the other conditions not fulfilled, Defendant's counsel may appear ex parte with 24 hours' notice  to ask that this order be set aside.

EXHIBIT 2
79

3.  The Court hereby sets a Readiness Conference on_____ at_____ . in
    Dept.·_____          to determine if Defendant has received all the
    Plaintiff's financial information and documents necessary for Defendant to
    participate in a meaningful settlement conference.  Plaintiff is hereby ordered to
    provide all necessary financial information to Defendant's counsel.  At least 21 calendar
    days before the Readiness Conference, Defendant shall transmit to Plaintiff an itemized
    list of the documents it requires from Plaintiff.  If Defendant receives all the
    information/documents prior to the date of the Readiness Conference, then defense
    counsel may phone the courtroom clerk and take the Readiness Conference off calendar
    and shall notify Plaintiff that the Readiness Conference will be taken off calendar within
    one hour of doing so.  If all the information/documents have not been received, then
    both counsel and Plaintiff must appear at the Readiness Conference.  If Plaintiff fails to
    appear or fails to show diligence in supplying the information, any or all of the
    following may occur: (1) Plaintiff may be sanctioned for violation of a court order, (2)
    the MSC explained below may be vacated and the CC § 2923.5 / *Mabry* claim, and any
    claims relying thereon or derived therefrom, may be stricken from the Complaint, (3)
    this Order may be dissolved, or (4) entry of any other orders the Court deems proper
    under the circumstances.  Defendant must file a "Notice of Appearance" and first
    appearance filing fee (instead of an Answer or Demurrer) before the date of the
    scheduled Readiness Conference.

4.  A Loan Modification Settlement Conference ("MSC") is hereby scheduled on
    **Friday,_____ at 8:30 a.m. in Department C-8** of this Court.  Good faith
    participation by the note holder/servicer Defendant in a meaningful settlement
    conference will be deemed full compliance with the requirements of CC § 2923.5 and
    the *Mabry* decision, and will result in this Court striking from the Complaint the CC §
    2923.5 cause of action, and any claims relying on or derived from said statute.  A
    foreclosure sale shall not be held until after 120 days from the date of this order and
    conclusion of a meaningful MSC (unless otherwise vacated by the Court)..  By
    participating in such conference the servicer is representing that it is the duly authorized
    servicer per relevant contracts to which it is a party and has full authority to modify the
    loan at issue.  If a HUD-Certified loan counselor participates in an MSC, each party
    shall have the right to disqualify one such counselor, with or without cause.

5.  Litigation is stayed for 90 days from the date of this order.  For purposes of filing a
    responsive pleading, Defendants will be deemed served on the date this order expires
    (90 days after entry of the order).  If the MSC process is not concluded within 90 days,
    Defendant's time to plead will be deemed extended until 30 days after completion of a

**EXHIBIT 2**
**80**

meaningful MSC.   Defendant(s) demurrer/motion to strike, if any, shall receive a hearing date within 30 days from filing the motion.

6. The Court hereby sets a Case Management Conference ("CMC") at _____ . on _____, in Department _____ . At least 15 calendar days' in advance of the CMC, the parties shall file and serve their Case Management Statement.

7. If any party deems that this Order or any provision becomes inappropriate for this case, then counsel may be heard in this department at 1:30 p.m. for an ex parte hearing, with 24 hours' notice to all parties, and the Court will, at that time, reconsider this Order, which may include striking any inappropriate clauses, setting aside this Order, and / or reconsidering a request for a TRO.

8. Plaintiff/Plaintiff's counsel hereby agrees to the terms of this 90 day stay order and specifically agree that Defendant(s) participation in this stay order and MSC process shall be deemed full compliance with the requirements of CC 2923.5 and the Mabry decision and that any claims relying or derived from said statute will be deemed moot and shall be stricken from the Complaint.

9. Pursuant to paragraphs 7 and 8 of this Stipulation and Order, Servicer understands that loan modification will be discussed at the settlement conference, and that it will be asked to consider Plaintiff for a loan modification.  If Servicer states that Plaintiff does not qualify for a loan modification, it may be asked "why" as part of the mediator's understanding of the issues for purposes of achieving a settlement.  Servicer understands that it can pull out of the early settlement conference process at any time, but if it does, it will lose the benefits of paragraph 8 and the case will return to the court's regular litigation track.  Servicer's acceptance of any payments pursuant to this Order is without prejudice to the lender's/servicer/investor's Notice of Default, if any, and foreclosure proceedings, except as otherwise provided for in this Stipulation.  Further, acceptance of said payments shall not be evidence that a lender/servicer/investor has waived any existing default on the underlying loan or deed of trust at issue.

_____                    _____
        Date                                      Plaintiff/Counsel


**IT IS SO ORDERED.**                      _____
                                                   Servicer


_____                    _____
        Date                              Judge of the Superior Court


**EXHIBIT 2**
**81**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)
BRICK PINCKNEY and JEANNE PINCKNEY

**DEFENDANTS**
JPMORGAN CHASE BANK, NA and CALIFORNIA RECONVEYANCE COMPANY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

30982 Steeplechase Dr.
San Juan Capistrano, CA 92675
Tel: (949) 388-5801

Attorneys (If Known)

Theodore Bacon, Rick D. Navarrette, and T. Matthew Hansen
AlvaradoSmith, APC
633 West Fifth Street, Suite 1100, Los Angeles, CA 90071
Tel: (213) 229-2400

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☑ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☑ MONEY DEMANDED IN COMPLAINT: $ According to proof at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Truth in Lending Act, 15 U.S.C. § 1601, and Real Estate Settlement Practices Act, 12 U.S.C. §§ 2601-2617

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

---

**FOR OFFICE USE ONLY:**  Case Number:  ## SACV11-00620 JST (JCGx)

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

**COPY**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                         ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                         ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                         ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
  ☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
  ☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _J. Matthew Damm_  Date _April 20, 2011_

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |